STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. WINFRED GRAY, DEFENDANT-RESPONDENT.

Argued February 4, 1975—Decided April 18, 1975.

*Mr. Joseph J. Rodgers,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. William F. Hyland,*

Attorney General of New Jersey, of counsel and on the brief).

*Mr. Philip A. Kahn,* designated counsel, argued the cause for defendant-respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

Sullivan, J. Winfred Gray, defendant herein, and a co-defendant Clarence Collins were convicted of having robbed Albert Silver of his wallet at knifepoint on December 15, 1972 (armed robbery under *N. J. S. A.* 2A:141–1 and 2A: 151–5). Gray appealed from the judgment of conviction (Collins did not appeal) and the Appellate Division, in an unreported opinion, reversed Gray's conviction. The Appellate Division held that the trial court had unduly restricted defense counsel who, during the cross-examination of Herman Moreano, a State witness, had sought to impeach his credibility.

Moreano was involved in the same criminal episode, having been the driver of the getaway car used by Gray and Collins. He had been apprehended shortly after the robbery and had been indicted for robbery.[1] Ultimately, he agreed to cooperate with the State, pleaded guilty to the charge of robbery and was awaiting sentence at the time he testified as a State's witness at defendant's trial.

On cross-examination of Moreano, defense counsel brought out that Moreano had been indicted only for robbery, whereas Gray and Collins were being charged with robbery while armed. However, when counsel sought to question Moreano as to "whether or not he knows how much time he's saved

---

[1]The police did not learn the identity of Gray and Collins until after the indictment of Moreano for *robbery* had been handed down on January 24, 1973. Gray and Collins were indicted for *armed robbery* on April 4, 1973.

already as to not being indicted for the armed part," the trial court ruled that the reason Moreano did not face an armed robbery count "was outside the scope of this trial," and it excluded such evidence under *Evid. R.* 4.

The Appellate Division held that counsel should have been permitted to bring out on cross-examination of Moreano the difference in the manner of indictment between him and defendants in order to be able to demonstrate that the witness may have received consideration for his testimony. It held that the error had sufficient possibility of affecting the result to require reversal. This Court granted certification on the State's petition. 66 *N. J.* 331 (1974).

We conclude that the trial court's ruling was erroneous but that defendant was not prejudiced thereby, for the reason that it was clearly established that Moreano could have had an ulterior motive in testifying as he did since he admitted that he hoped for a better sentence because he was helping the State. (He had not yet been sentenced on his plea to the charge of robbery.)

We recognize that testimony of an accomplice favorable to the State is to be carefully scrutinized and assessed in the context of possible interest. *State v. Spruill,* 16 *N. J.* 73, 80 (1954). In the instant case Moreano's testimony identifying defendant Gray as one of his confederates was an integral part of the State's case. His credibility and possible motive to fabricate were, therefore, relevant considerations which defense counsel properly explored. It was shown that Moreano had been indicted for robbery, had pleaded guilty and was awaiting sentence at the time he testified. He denied that he had been promised anything in return for his testimony, but acknowledged that he hoped for "some kind of better sentence" because he was helping the State.

In summation, counsel for Gray hammered at the credibility of Moreano's story charging that the robbery actually had been committed by two other friends of Moreano whom

he was trying to protect. He said that Moreano was the one who had the most to gain by cooperating with the police because "he's the one they had." On two occasions during summation counsel for defendant reminded the jury that "Moreano was only charged with robbery."

The only thing that defense counsel was not permitted to develop was the lesser sentence exposure Moreano had. However, as heretofore noted, the jury had been effectively reminded that Moreano was only charged with robbery while Gray and Collins were on trial for robbery while armed. We think the amount of lesser sentence exposure should have been allowed; but, in the circumstances of this case, such proof would have been only cumulative to the other evidence as to Moreano's possible motive to cooperate with the State.

One other matter requires discussion. Both Mr. and Mrs. Silver positively identified Gray at the trial as one of the robbers. Their testimony also disclosed that during the course of the investigation they had examined photographs submitted to them by the police. Ten of the photographs used in the out-of-court identification procedures were marked Exhibits S–1 to S–10 for identification. Whether through oversight or otherwise, the exhibits so marked for identification were not placed into evidence at the trial.

When the photographs were first exhibited to Mr. Silver by the police, he had identified Exhibits S–1 and S–2 as pictures of the robbers. He also told the police that he felt those were the two men but "I would feel a heck of a lot more comfortable if I could see them personally." (It was undisputed that S–2 was a photograph of Collins. However, Exhibit S–1 was not a photograph of Gray but of a man named Cotton and the investigating police officer testified that Gray's photograph was not included in the S–1 to S–10 group.)

Mrs. Silver was even less certain when she was shown the photographs by the police. Her selection of Exhibits

S–1 and S–2 was accompanied by a statement that she could not positively identify them without seeing them first.

After the jury had retired to deliberate, and while the attorneys were not present, the jury sent a note to the judge asking if they could see the photographs S–1 to S–10. When counsel could not be found, the court took upon itself to respond to the inquiry and denied the request. Defendant claimed this ruling also was reversible error in his appeal to the Appellate Division. However, since that court set aside the conviction on the ground heretofore discussed, it did not decide the question raised.

■ It is clear that the court should have consulted with counsel before attempting to answer the inquiry from the jury. Had this been done, the issue now presented might never have arisen. In any event, the photographs S–1 to S–10 had been marked for identification only, and not in evidence. While this may have been an oversight on the part of someone, it was not the court's function to enlarge the record on an *ex parte* basis.

■ Defendant argues that since the identification was a jury function, the jury was entitled to compare the actual photographs to the defendant in court to ascertain the reliability of the subsequent in-court identification. Additionally, since the statements to the effect that out-of-court identifications of Gray, photographs or otherwise, were less than positive, it was crucial for the jury to have had the opportunity to "compare defendant with the photographic array."

We find no reversible error. It was undisputed that Gray's picture was not included in the group of photographs marked Exhibits S–1 to S–10, so that as far as he is concerned, the jury could not have made any comparison and in any event, the jury already had before it the uncertainty of both Mr. and Mrs. Silver in their pretrial identifications of the photographs shown them by the police.

The judgment of the Appellate Division is reversed and the conviction of defendant Gray hereby reinstated.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge KOLOVSKY—6.

*For affirmance*—None.