874 A.2d 1122 (2005)
378 N.J. Super. 125
STATE of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
Muhammad BASIT, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 20, 2005.
Decided June 9, 2005.
*1123 Yvonne Smith Segars, Public Defender, attorney for appellant/cross-respondent (Alan I. Smith, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent/cross-appellant (Jeanne Screen, Deputy Attorney General, of counsel and on the brief).
Before Judges WEFING, FALL and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
The jury in this matter heard evidence that at approximately 5:00 a.m. on January 27, 2001, Anthony Brown was standing outside of a high-rise building in Newark when a vehicle stopped in front of the building, and a man, later identified as defendant, exited from the vehicle's passenger side and said to Brown, "You remember me, mother fucker." With that, another individual exited the driver's side of the vehicle and fired gunshots that killed Brown. Both assailants re-entered the vehicle and drove away.
Defendant was arrested on February 8, 2001 and later charged with second-degree conspiracy to commit murder, contrary to N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (count one); first-degree murder, contrary to N.J.S.A. 2C:11-3a(1), and -3a(2) (count two); third-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5b (count three); and second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4a (count four).
On February 24 and 25, 2003, the trial judge conducted a preliminary Wade[1] hearing on defendant's motion to suppress the out-of-court identification made by Gina Freeman. The motion was denied.
At the conclusion of a trial, the jury acquitted defendant of murder but found him guilty on all other counts. Defendant was sentenced to a ten-year term of imprisonment with a five-year period of parole ineligibility on count one (second-degree conspiracy to commit murder). The court merged count three (unlawful possession of a weapon) into count four (second-degree possession of a weapon for an unlawful purpose) and imposed a ten-year term of imprisonment with a five-year period of parole ineligibility on count four to run concurrently with the sentence imposed *1124 posed on count one. Mandatory fees and assessments were also imposed.
Defendant appealed, raising the following arguments:
I. THE TRIAL COURT ABUSED ITS DISCRETION BY DEPRIVING THE DEFENDANT [OF] THE OPPORTUNITY TO ESTABLISH THAT OUT-OF-COURT INDENTIFICATIONS AND THE SUBSEQUENT IN-COURT IDENTIFICATIONS BY MS. SUTTON AND MS. FREEMAN WERE UNRELIABLE.
II. IN SUMMATION THE PROSECUTOR IMPROPERLY ASSERTED THAT THE JURY WOULD BE VIOLATING THEIR OATH AS JURORS IF THEY FOUND THE TRIAL TESTIMONY OF MS. SUTTON AND MS. FREEMAN NOT TO BE CREDIBLE BECAUSE OF THEIR DRUG ADDICTION (Not Raised Below).
III. THE JURY CHARGE WAS PREJUDICIALLY DEFECTIVE BECAUSE THE TRIAL COURT FAILED TO PROVIDE ADEQUATE GUIDANCE TO THE JURY AS TO HOW TO ASSESS CONSPIRATORIAL CULPABILITY (Not Raised Below).
IV. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GIVE THE JURY, SUA SPONTE, INSTRUCTIONS PURSUANT TO STATE V. EARLE AND STATE V. GUNTER (Not Raised Below).
V. THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ENGAGED IN AN EX PARTE OFF-THE-RECORD COMMUNICATION WITH A DELIBERATING JURY (Not Raised Below).
VI. THE CONCURRENT TEN (10) YEAR SENTENCES WITH FIVE (5) YEARS OF PAROLE INELIGIBILITY IMPOSED ON THE DEFENDANT'S CONVICTIONS FOR CONSPIRACY ON COUNT ONE AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE ON COUNT FOUR WERE MANIFESTLY EXCESSIVE AND AN ABUSE OF THE COURT'S DISCRETION.
The State has also appealed, arguing:
THE TRIAL COURT INCORRECTLY MERGED DEFENDANT'S CONVICTION FOR POSSESSION OF A WEAPON WITHOUT A PERMIT WITH HIS CONVICTION FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE.
We affirm the rulings made by the trial judge on the Wade application for the reasons set forth in Part I of this opinion. Because of the trial judge's improper unrecorded, ex parte communications with the deliberating jury discussed in Part II of this opinion, we reverse and remand for a new trial. As a result, we need not address the issues raised in defendant's Points II, III, IV and VI. Lastly, in considering the State's cross-appeal, we observe that the trial judge erroneously merged the convictions on counts three and four. We have repeatedly held that convictions for the unlawful possession of a weapon and possession of a weapon for an unlawful purpose do not merge. See State v. Gross, 216 N.J.Super. 92, 97, 523 A.2d 212 (App.Div.), certif. denied, 108 N.J. 194, 528 A.2d 19 (1987); State v. Cooper, 211 N.J.Super. 1, 22-23, 510 A.2d 681 (App.Div.1986); State v. Latimore, 197 N.J.Super. 197, 215-16, 484 A.2d 702 (App.Div.1984), certif. denied, 101 N.J. 328, 501 A.2d 978 (1985).

I
Defendant argues that the trial judge erred by failing to conduct a full *1125 Wade hearing regarding Gina Freeman's out-of-court identification of defendant. After hearing some testimony, the judge concluded that defendant had failed to make a "threshold showing of some evidence of impermissible suggestiveness" in the identification process, see State v. Ortiz, 203 N.J.Super. 518, 522, 497 A.2d 552 (App.Div.), certif. denied, 102 N.J. 335, 508 A.2d 212 (1985), and denied defendant's request for a full Wade hearing at which the reliability of the out-of-court identification would also be examined. We affirm the trial judge's rulings regarding the Wade application.
The testimony of an investigator with the prosecutor's office indicated that Freeman had been arrested by the police. While in the presence of the police, Freeman advised that she had witnessed a homicide. Freeman gave an oral statement and indicated a willingness to attempt to make an identification. The investigator testified that Freeman was then shown a box containing approximately twenty-five photographs of individuals known to frequent the area where the shooting occurred from which she selected defendant's photograph. The investigator then made a six-photo array containing defendant's photograph and five other individuals with similar appearances. Again, Freeman selected defendant's photograph and gave police a written statement to that effect. The judge found, after hearing the direct and cross-examination of the investigator, that there was no evidence of impermissible suggestiveness. We agree that defendant had failed to show any indication of impermissible suggestiveness in the manner in which Freeman made her identification and, thus, find no abuse of discretion in the judge's refusal to permit testimony regarding the reliability of the identification at the hearing. State v. Ortiz, supra, 203 N.J.Super. at 522, 497 A.2d 552.[2]

II

A
At 9:15 a.m. on February 28, 2003, the jury began its deliberations. At some point that morning (the record does not indicate when), the jury posed two questions. Other than what is stated in the portion of the trial transcript quoted below, the record does not contain the precise content of the jury's questions. The record reveals only that the following occurred that morning outside the presence of the jury:
(Jury begins deliberations at 9:15 a.m.)
(Jury Question)
THE COURT: Two jury questions. What time was Gina Freeman arrested [on January] 28th? My recollection, as well as Prosecutor Wright and Attorney Rojas's of that question was, that information was never provided during the course of the trial. So I'm going to tell the jury simply that. That information was not presented during the course of the evidence, so I have no answer for you there.
And two, when was [defendant] arrested? The answer is February 8th. Prosecutor Wright is before the grand jury, can't get here for sometime. I'm going to go in the jury room myself and give those responses to the jury. [The *1126 prosecutor] had no objection, Mr. Rojas, any objection[?]
MR. ROJAS [defense counsel]: No objection, your Honor.
THE COURT: So I'll do that now.
[Emphasis added.][3]
The record does not indicate what the jury was told by the judge. We know only that the judge spoke to the jury out of the presence of counsel and off the record and, thus, we know only what the judge said he intended to tell the jury and not what he actually said or whether or to what extent any juror may have responded.
Following the judge's ex parte communications, the jury deliberated further and also asked other questions that required supplemental instructions. All other instructions were given by the judge in open court and were recorded. At no time, however, did the trial judge ever describe what occurred when he had his ex parte, unrecorded discussion with the jury.
During the afternoon of February 28, 2003, the jury rendered its verdict. Defendant was acquitted of murder but found guilty of all the other charges.

B
"All trials ... shall be conducted in open court unless otherwise provided by rule or statute." R. 1:2-1. As a result, it is beyond question that a judge should prevent a jury from being influenced by outside sources during its deliberations, State v. Hightower, 146 N.J. 239, 266-67, 680 A.2d 649 (1996); Panko v. Flintkote Co., 7 N.J. 55, 80 A.2d 302 (1951), and must also insure that other proceedings that occur during deliberations (such as readbacks of testimony) be recorded and conducted in open court, in the presence of the accused, State v. Wilson, 165 N.J. 657, 662, 762 A.2d 647 (2000); State v. Brown, 362 N.J.Super. 180, 827 A.2d 346 (App.Div.2003); R. 1:2-2. In this same vein, a judge must scrupulously avoid engaging in his own ex parte and unrecorded communications with the jury.
The appellate courts of this State have repeatedly and clearly condemned judges' ex parte communications with deliberating juries. Nearly eighty years ago, the former Supreme Court of this State considered the legitimacy of the following procedure adopted by a trial judge in response to a jury's request for additional instructions:
The clerk communicated with the trial judge by telephone, and was directed by him to answer the inquiry in accordance with answers given to the questions by the judge to the clerk over the telephone  the clerk taking down the answers in writing, and by direction of the judge delivering this writing to the jury. [State v. Duvel, 4 N.J. Misc. 719, 720, 134 A. 283 (Sup.Ct.1926), aff'd o.b., 103 N.J.L. 715, 137 A. 718 (E. & A.1927).]
The Supreme Court found that this procedure was improper, even though it was understood that the judge's instructions were accurately taken down by the clerk, and were legally and factually correct. Ibid. Notwithstanding the accuracy of the information provided to the jury, the court condemned what had occurred, calling the procedures adopted by the trial judge
so irregular and so likely to be prejudicial to a defendant and so charged with possibilities of harm and abuse as to require a reversal. All the authorities *1127 seem to require and insist upon judicial acts of this character being done and performed in open court.
[Ibid.]
The Court of Errors and Appeals affirmed the reversal of the judgment "for the reasons expressed in the opinion delivered by the Supreme Court." 103 N.J.L. at 715.
Despite the clarity of the pronouncement in Duvel, a few years later the former Supreme Court was again required to declare that if a deliberating jury requires supplementary instructions that "they shall be given only in open court in the presence of the parties and their counsel.. . ." Leonard's of Plainfield, Inc. v. Dybas, 130 N.J.L. 135, 137, 31 A.2d 496 (Sup.Ct.1943).
A few years later, the new Supreme Court considered the trial judge's ex parte communications during deliberations in a murder trial that led to the defendant being sentenced to death. State v. Auld, 2 N.J. 426, 67 A.2d 175 (1949). The Court explained those ex parte events in the following way:
The jury had been charged and retired. After about an hour the judge, in chambers, advised the prosecutor and counsel for the defendant, who was not present, that he had been requested by the jury to write on a piece of paper the five possible verdicts, one of which, in the charge, they were instructed they could return. This request had been conveyed to the judge by a court constable. The court advised counsel he had consulted with the reporter and had him read back from the stenographic notes what those possible verdicts were and he then wrote them down on a piece of paper. The paper contained the five possible verdicts which were verbatim as contained in the charge and merely repetitious thereof. He then asked of counsel "Do you have any objection to the jury having this paper for their use?" Defendant's counsel replied he had no objection and said "I am willing for them to have that piece of paper." The record does not disclose what thereafter happened but there appears to be no doubt the constable transmitted the paper writing to the jury.
[Id. at 431, 67 A.2d 175.]
While the Court affirmed, it described the communication between judge and jury as "improper." Id. at 432, 67 A.2d 175.
Fifty years ago, we said that communications "between a trial judge in chambers and a jury engaged in deliberations in the jury room concerning any matter implicated ever so remotely in the consideration and decision of the case are forbidden by the essentials of our trial procedure as imperiling, perhaps, the principles of due process." Guzzi v. Jersey Central Power & Light Co., 36 N.J.Super. 255, 264-65, 115 A.2d 629 (App.Div.1955).
Thirty years ago the Supreme Court was required to consider a similar problem in State v. Gray, 67 N.J. 144, 336 A.2d 486 (1975). After the jury had retired to deliberate, and while the attorneys were not present, the jury sent a note to the judge asking to see certain photographs identified during the trial. As the Court explained, "[w]hen counsel could not be found, the court took upon itself to respond to the inquiry and denied the request." Id. at 149, 336 A.2d 486. The Court condemned this ex parte proceeding in a brief comment. Ibid.
And, as recently as ten years ago, we considered the "troublesome issue" that arose when, after receiving a cryptic note from a deliberating jury and after receiving the consent of counsel, the trial judge "proceeded to enter the jury room outside the presence of counsel and defendant and without a court reporter to record his colloquy *1128 with the jury" and inquired as to what it was that the jury wanted to know. State v. Brown, 275 N.J.Super. 329, 331, 646 A.2d 440 (App.Div.1994). In considering this problem, we summarized the unequivocal admonition of the prior decisions of the courts of this State in the following way: "A judge should avoid engaging in any ex parte communications with the jury regarding its deliberations." Ibid. (emphasis added).
Despite the clarity of all these prior holdings, it is most unfortunate that we are again faced with a situation where a judge had unrecorded ex parte communications with a deliberating jury. The comments of the Supreme Court of the United States in United States v. United States Gypsum Co., 438 U.S. 422, 460-61, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854, 884 (1978) elaborate on the dangers of such communications:
Any ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error.... [E]ven an experienced trial judge cannot be certain to avoid all the pitfalls inherent in such an enterprise. [I]t is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting. Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instructions to the jury  all the more so when counsel are not present to challenge the statements.
In Brown, we considered these comments and concluded that not only should such communications not be made in the future, just as they were never permitted in the past, but also that "the dangers of any ex parte communications between the trial judge and the jury regarding its deliberations are so great that the judge should not seek the consent of counsel to such a procedure under any circumstances." 275 N.J.Super. at 332, 646 A.2d 440 (emphasis added).
The pitfalls described in United States Gypsum still exist and our condemnation of ex parte communications by a judge to a deliberating jury remains unchanged. Such occurrences are improper and we condemn them in the strongest possible terms. The only question that remains is whether this error requires reversal.

C
While it is clear that ex parte communications by judge to jury are erroneous and improper, the distinction between those ex parte occurrences that require reversal and those that may be excused as harmless is not so clear.
Duvel and Leonard's of Plainfield appear to have suggested an automatic reversal standard, but, in State v. Auld, the Court held that ex parte communications by the judge to the jury need not always constitute reversible error, stating: "if the record shows affirmatively that the communication had no tendency to influence the verdict the judge's impropriety in communicating with the jury out of the presence of the defendant does not require reversal." 2 N.J. at 432, 67 A.2d 175. It is enlightening, however, that in so holding the Court did not abandon the holdings in Duvel and Leonard's of Plainfield. Instead, the Court found those earlier decisions to be distinguishable:
Reliance is placed by the defendant on the opinion of the former Supreme Court in Leonard's of Plainfield.... That case is clearly distinguishable. There the trial judge entered the jury room alone and gave supplementary instructions to the jury in the absence of defendant and his counsel. These instructions *1129 were not recorded and the appellate tribunal was unable to say whether their effect was prejudicial or otherwise. So likewise is State v. Duvel... clearly distinguishable on the facts.
[2 N.J. at 432-33, 67 A.2d 175.]
We discern from Auld's distinguishing between its circumstances and those in Duvel and Leonard's of Plainfield that when the record fails to replicate what occurred during the ex parte proceeding, and when the appellate court is "unable to say" whether the effect of the ex parte proceeding "was prejudicial or otherwise," then reversal is required. State v. Auld, supra, 2 N.J. at 433, 67 A.2d 175. As we similarly stated in an earlier case, when "the record fails to disclose whether or not the communication was prejudicial, it will be presumed to be so and constitute cause for a reversal of the judgment." Guzzi, supra, 36 N.J.Super. at 264, 115 A.2d 629. Moreover, while we adhere to the thrust of these prior decisions that an appellate court's ability to assess the impact of an ex parte, unrecorded communication is essentially impossible without an affirmative showing of what actually occurred in the ex parte proceeding, we also question the desirability of excusing such improper conduct by a judge and conclude that the preservation or endorsement of the product of such a flawed proceeding is inimical to the administration of justice absent the very narrow circumstances outlined in decisions such as Auld and Brown.
That is, we recognize that there are times, demonstrated by Auld and Brown, where the presence in the record of an adequate description of the ex parte proceeding may permit a reviewing court to determine that the presumption of prejudice has been dispelled. In Brown, for example, the judge entered the jury room in order to clarify what it was that the jury sought; after the judge emerged:
[H]e advised counsel that the jury did indeed desire to hear a readback of certain testimony [as he suspected]. The judge also indicated that while he was in the jury room the foreperson had asked him an additional question not encompassed by the jury's original note. The judge again expressed some uncertainty as to what information the jury was seeking, and this time he brought the jury back into the courtroom and interrogated the foreperson regarding all three of the jury's questions.

[State v. Brown, supra, 275 N.J.Super. at 331, 646 A.2d 440 (emphasis added).]
Since a record was made after the judge's improper ex parte communication, and since the jury foreperson was "interrogated" regarding the original note as well as the jury's subsequent questions  in open court and in the presence of counsel  we concluded in Brown that this affirmatively eviscerated any presumed prejudice. Id. at 334, 646 A.2d 440. Here, unlike Brown, the record contains no affirmative showing that would overcome the presumption of prejudice. In this case, the trial judge's comments not only went unrecorded when given but were never memorialized in later proceedings such as occurred in Brown.
In considering the significance of extraneous influences upon a jury and the validity of a verdict given by a jury so influenced, we are guided by the decisions described above, as summarized by the more recent statement given in a different context by our Supreme Court in State v. Hightower:
Any juror misconduct or improper intrusion into the deliberations of a jury that "could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge" is a ground for a mistrial. Panko v. Flintkote Co., [supra, 7 N.J. at 61, 80 A.2d 302]. A jury's *1130 verdict must be "based solely on legal evidence ... and entirely free from the taint of extraneous considerations and influences." Ibid. . . . Thus, any irregularity is presumptively prejudicial. . . . State v. Auld, [supra, 2 N.J. at 432, 67 A.2d 175.]
[State v. Hightower, supra, 146 N.J. at 266-67, 680 A.2d 649 (some citations omitted).]
Notwithstanding our inability to conclude that the jury's verdict was free of the taint of the trial judge's ex parte communications, the State would have us assume, on this barren record, that no harm resulted from the judge's violation of the elemental admonition that all communications with a deliberating jury must be made in open court and in the presence of counsel (or in counsel's absence so long as counsel has been given a full and fair opportunity to be present). We are incapable and unwilling to agree with the State's laissez-faire approach. The authorities we have canvassed require that we must examine the record to determine whether there has been an affirmative showing that would convince us that defendant has not been prejudiced by the judge's improper conduct. The record in this regard, which we quoted in full earlier, gives no indication of what transpired in the jury room after the judge indicated, in open court, what it was that he would tell the jury. Unlike, for example, the circumstances in Auld and Brown, what the judge said to the jury out of the presence of the parties and without the accompaniment of a court reporter, was never repeated in open court. No affirmative showing can be found in the record that would permit examination of the effect of the ex parte communication. Since the presumption of prejudice has not been overcome, we conclude that the judgment of conviction must be reversed and the matter remanded for a new trial.
Reversed.
NOTES
[1] United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
[2] Defendant has argued in this court that the identification procedures were impermissibly suggestive by relying upon the trial testimony of both Freeman and another alleged eyewitness, Tyishna Sutton. This testimony has no bearing on the propriety of the judge's pretrial Wade decision. State v. Tavares, 364 N.J.Super. 496, 502, 837 A.2d 398 (App.Div.2003).
[3] The transcript also does not make clear whether or not the defendant was present during this brief proceeding in open court. In reversing, we need not reach the question of whether it was reversible error for the court to have conducted this proceeding in the absence of defendant.