SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Shaffona Morgan (A-119-11) (069967)**

**Argued March 11, 2013 -- Decided August 8, 2013**

**RABNER, C.J., writing for a unanimous Court.**

The issues in this appeal are (1) whether the trial court erred by having ex parte communications with the jury during deliberations and permitting the jurors to take home written jury instructions and, (2) if the trial court erred, whether defendant was prejudiced by any errors.

Defendant Shaffona Morgan was a regular customer at the Pollo Deli in Trenton. Juan Carlos Martinez, the victim, owned the deli, and his father, Juan Batista Martinez, operated it. Miguel Moran, Juan Batista's nephew, worked in the kitchen. On November 24, 2005, defendant, Juan Carlos, and Juan Batista had an altercation over a Boost Mobile calling card purchased by defendant at the deli. When she was refused a refund, defendant took five DVDs from the counter and told Juan Batista that she was keeping them if she did not get her money back. At trial, Juan Carlos, Juan Batista, and Moran testified that when Juan Carlos tried to stop defendant, she pulled out a handgun and shot Juan Carlos in the back as he tried to push his father out of the way. According to defendant, Juan Batista pulled out a gun from behind the counter and pointed it at her, at which time defendant put the DVDs back and ran out of the store. Defendant claimed that outside the store Juan Batista jabbed her with the gun and, with his finger on the trigger, "[a] shot went off."

Defendant was indicted on charges of first-degree attempted murder, first-degree robbery, second-degree aggravated assault against Juan Carlos, fourth-degree aggravated assault against Juan Carlos and Juan Batista, and second-degree possession of a handgun for an unlawful purpose. The trial began on February 19, 2008. The court instructed the jury on February 27, and the jury began deliberating that afternoon. The following day, the jury sent a note with three questions. In response to one of the questions, the judge advised the jury that she was "preparing written instructions on robbery, theft, and attempt…." That afternoon, the trial judge entered the jury room without counsel. In an ex parte discussion, the foreperson asked if the jury could take the written instructions home for the weekend. The judge granted the request with the caveat: "Do not do any research, read anything, hear anything, discuss it at all until all of you are back Monday morning at 9:00." The jury returned that Monday, March 3, and continued deliberating. Late in the day, the trial judge had a second ex parte discussion in the jury room. The judge told the jury to be back at 9 a.m. the next day and that there would be a readback at 9:15. The judge further explained that another judge would be presiding over the morning proceedings, but that she would be back in the afternoon.

The jury delivered its verdict the next day. It acquitted defendant of attempted murder and convicted her of second-degree aggravated assault against Juan Carlos, fourth-degree aggravated assault against Juan Carlos, and possession of a handgun for an unlawful purpose. The jury could not reach a unanimous verdict on robbery or aggravated assault against Juan Batista. The trial judge sentenced defendant and dismissed the two counts on which the jury deadlocked.

On direct appeal, defendant challenged the two ex parte communications and argued that it was error for the jurors to take home written instructions. The appellate panel strongly disapproved of the trial judge's ex parte communications but determined that the communications were not prejudicial to defendant. In addition, the panel did "not discern a per se impediment to permitting the jury to take all or parts of the [jury instructions] outside the jury room." State v. Morgan, 423 N.J. Super. 453, 473 (App. Div. 2011). The panel declined to reverse defendant's conviction for a number of reasons: it found "no evidence… that anything untoward actually happened"; the trial judge gave specific cautionary instructions; and, after receiving the charge on attempt, robbery, and theft, the jury acquitted defendant of attempted murder and reached no verdict on the robbery count." Id. at 472-73.

The Supreme Court granted defendant's petition for certification limited to the following issues: "whether the trial court erred[] by engaging in ex parte communication with the deliberating jury" and "in permitting the jurors to take written jury instructions home with them to review over the weekend." 210 N.J. 477 (2012).

**HELD:** Both ex parte communications between the trial judge and jury were improper and the trial court erred in permitting the jurors to take written instructions home for the weekend. Despite those errors, the record affirmatively shows that the contacts and the decision to permit the jury to take home written instructions did not prejudice defendant and had no tendency to influence the verdict.

1. Ex parte communications between a trial judge and a jury are improper and must be avoided. Any proceedings that take place during jury deliberations, such as readbacks, should be on the record, in open court, with counsel and the accused present. There are no exceptions. However, a "judge's improper entry into the jury room does not automatically require" reversal of a conviction. State v. Brown, 275 N.J. Super. 329, 332 (App. Div. 1994). There are three ways to evaluate a judge's inappropriate communication with a jury: (1) if the record affirmatively reveals that the defendant was prejudiced, reversal is required; (2) if the record does not show whether the ex parte contact was prejudicial, prejudice is presumed; and (3) if the record affirmatively discloses "that the communication had no tendency to influence the verdict," the outcome should not be disturbed. State v. Auld, 2 N.J. 426, 432 (1949). An adequate record of the contact may be able to dispel a presumption of prejudice. To be clear, though, the Court does not in any way endorse ex parte communications between a trial judge and a jury. (pp. 11-14)

2. The court rules are clear about whether jurors may take written jury instructions home. They may not. Jurors may only review written instructions in the jury room. R. 1:8-8(a). It is important to insulate the jury from influences that could undermine its deliberations. Allowing jurors to take home written instructions increases the risk that jurors will conduct independent research about the law or the facts of the case on the Internet, or in some other manner. In addition, jurors with written instructions in hand might be more inclined to discuss the trial with family members and friends. It is also essential that jurors deliberate as a collective group and reach a verdict through the exchange of views among all members of the jury. (pp. 14-18)

3. Both ex parte communications with the jury were plainly improper. That said, the March 3, 2008 communication related only to ministerial scheduling matters, and the record therefore affirmatively shows that the communication had no tendency to influence the verdict. The ex parte communication on February 28, 2008 was not only improper, but it was also error for the court to allow the jury to take home copies of the charge. The record discloses that the ex parte communication was recorded and transcribed and that the court warned the jurors not to discuss the case with others, not to do their own research, and to avoid outside sources of information. The record contains no evidence that the jury behaved in an "untoward" manner or that any outside influences infected the verdict. In addition, the jury acquitted defendant of attempted murder and reached no verdict on the robbery count. The Court therefore finds that the second ex parte conversation also had no tendency to influence the verdict. The record affirmatively overcomes any presumption of prejudice that might otherwise exist. For that reason, the Court does not reverse defendant's conviction. (pp. 18-22)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

SHAFFONA MORGAN,

    Defendant-Appellant.


        Argued March 11, 2013 – Decided August 8, 2013

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 423 N.J. Super. 453 (2011).

        Stefan Van Jura, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney; Mr. Van Jura and Daniel J. Brown,
        Designated Counsel, on the briefs).

        Daniel A. Matos, Assistant Prosecutor,
        argued the cause for respondent (Joseph L.
        Bocchini, Jr., Mercer County Prosecutor,
        attorney; Mr. Matos and Dorothy A. Hersh,
        Assistant Prosecutor, on the letter briefs).

        Michael Noriega argued the cause for amicus
        curiae American Civil Liberties Union of New
        Jersey Foundation (Edward L. Barocas,
        Director, attorney; Mr. Noriega and
        Alexander R. Shalom, on the brief).


    CHIEF JUSTICE RABNER delivered the opinion of the Court.

    In this case, a trial judge had two ex parte discussions

with a jury, while it was deliberating, and allowed the jurors

to take home written copies of part of the jury instructions. Settled case law makes clear that ex parte communications with a jury are improper and must always be avoided. In addition, when a judge gives written instructions to a jury, the relevant court rule requires that the instructions be available for review in the jury room and nowhere else.

Both ex parte communications were recorded and transcribed. Despite the errors in this case, the record affirmatively shows that the contacts and the decision to permit the jury to take home written instructions in this case did not prejudice defendant and had no tendency to influence the verdict. We therefore affirm the judgment of the Appellate Division, which affirmed defendant's convictions.

## I.

We draw the following facts from the testimony at trial. Defendant Shaffona Morgan was a regular customer at the Pollo Deli, a small deli and grocery store in Trenton. Juan Carlos Martinez, the victim, officially owned the deli, and his father, Juan Batista[1] Martinez, operated it. (To avoid confusion, we refer to them by their first and middle names.) Miguel Moran, a nephew of Juan Batista, worked in the kitchen.

---

[1] The record contains different spellings for the father's middle name. We use the version in the indictment.

2

On November 24, 2005, defendant bought a Boost Mobile calling card at the deli for twenty dollars. About thirty minutes later, she returned to the store to complain that the card had already been used. Defendant asked for a replacement card and then a refund. When Juan Batista refused, defendant grabbed five DVDs from a counter and told him that she was going to keep them if she did not get her money back.

The witnesses' accounts differed about what happened next, and the jury was required to make a credibility call. Juan Carlos, Juan Batista, and Moran testified as follows. Defendant tried to leave the store with the DVDs. When Juan Carlos stopped her in front of the store, his father grabbed the DVDs out of her hand. Defendant then pulled out a handgun. As Juan Carlos tried to push his father out of the way, defendant shot Juan Carlos in the back. She then pointed the gun at Juan Batista and fled.

According to defendant, after she took the DVDs and tucked them under her jacket, Juan Batista pulled out a gun from behind the counter and pointed it at her. She then returned the DVDs to the counter and ran out of the store. Juan Carlos grabbed her just outside the store and searched her pockets. Meanwhile, Juan Batista followed them outside and pointed the gun at her again. Right after Juan Carlos started to walk back to the store, Juan Batista began to jab her with the gun. Defendant

3

tried to push it away. According to her testimony, Juan Batista's finger was on the trigger, and "[a] shot went off." Defendant then fled.

A Mercer County grand jury charged defendant in an indictment with first-degree attempted murder, N.J.S.A. 2C:11-3 and 2C:5-1; first-degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault against Juan Carlos, N.J.S.A. 2C:12-1b(1); fourth-degree aggravated assault against Juan Carlos, N.J.S.A. 2C:12-1b(4); fourth-degree aggravated assault against Juan Batista, N.J.S.A. 2C:12-1b(4); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a.

The trial began on February 19, 2008. After four days of testimony, the trial court instructed the jury on February 27, 2008. The jury began deliberating that afternoon and returned the following morning. Later in the day on February 28, the jury sent a note with three questions. Only the second question is relevant to this appeal: the jury's request "for the law to be explained . . . regarding Count 2" (robbery). In a brief discussion with counsel, the judge said, "I am preparing written instructions on robbery, theft, and attempt, and so they should be ready shortly . . . ." Neither the State nor defense counsel objected.

4

At 2:40 p.m., the trial judge responded to all three questions in open court with counsel present.  As to the second item, the judge told the jury,

> [y]ou've asked for the law to be explained to you regarding Count 2, robbery.  I'm having copies prepared and edited actually as we speak so that I will send written copies of robbery, attempt, and theft to you because you'll recall that an element of robbery is that it occurred during the use of force, occurred during the course of a theft, and that is defined as to include not only a theft, but an attempted theft.  So I am including the definition of theft and attempt as elements of robbery.

The jury resumed its deliberations at 2:54 p.m.

An hour later, for reasons that are not clear from the record, the trial judge entered the jury room without counsel. At that time, the following ex parte discussion took place:

> THE FOREPERSON:  Hello, Judge.  Thank you for coming this afternoon.
>
> Would it be possible for us to take the explanations of attempt and robbery and theft home with us this weekend to read, or is that something that must remain in the room?
>
> THE COURT:  No jury has ever asked to do that.
>
> THE FOREPERSON:  We want homework.  We're a studious group.
>
> THE COURT:  You know what, let me just check with the attorneys.  Did somebody --
>
> SERGEANT-AT-ARMS:  I think Bell said she was going to call.

5

THE COURT: I don't see any problem with it. I don't want you to take the verdict sheets home, but if you wish to take those home -- but you can't look up any words in the dictionary or anything like that. You're limited to the four corners of those.

JUROR: It's kind of rough here. It's a lot to read at 4:00 in the afternoon.

THE COURT: You may, but bring them back, and as I said, don't look for definitions of any terms. If any need further definition, then you can ask me that.

I told you during February we would have off on Fridays and my calendar tomorrow is not pretty. So I would prefer that you come back on Monday unless you're opposed to that.

THE JURY: That's perfect.

THE COURT: Because I will have a courtroom full of people, and the movement just takes a while. So Monday, I think would be much more under control. So enjoy the weekend. Do not do any research, read anything, hear anything, discuss it at all until all of you are back Monday morning at 9:00. Okay.

The jury returned on March 3, 2008 and continued deliberating. Late in the day, the trial judge had a second ex parte discussion in the jury room:

THE COURT: We won't be able to get that readback done by 4:15 since that's when you would like to be excused. I'll excuse you for the day and we'll have it ready for you tomorrow morning. So why don't you come tomorrow at 9:15 just so the court reporter can get set up. She's essentially reading back notes taken by another reporter.

6

A JUROR: Are you saying we can go in the courtroom at 9:15? If we wanted to review we can come at 9?

THE COURT: That's fine. Would you like the readback even later than 9:15?

A JUROR: 10, 15 minutes before.

THE COURT: Then come at 9 and the readback will begin at 9:15. I'm going to have another judge covering [for me] in the morning and expect to be back in the afternoon, but I'll be having a root canal so don't think I'm doing anything that's fun, but I can't put it off. I'll be talking a little funny, but those things happen. So there will be another judge and I'll bring him or her up to date on what's happening.

A JUROR: Back what time?

THE COURT: 9 o'clock --

A JUROR: But you'll be back --

THE COURT: By the afternoon, I hope. Okay? Have a pleasant evening and, again, please don't discuss the testimony. Wait until all 12 of you are back tomorrow before you begin discussions again and avoid any outside information including newspaper articles.

Thank you, and have a pleasant evening.

The jury delivered its verdict the next day. It acquitted defendant of attempted murder and convicted her of second-degree aggravated assault against Juan Carlos, fourth-degree aggravated assault against Juan Carlos, and possession of a handgun for an unlawful purpose. The jury could not reach a unanimous verdict on robbery or aggravated assault against Juan Batista.

7

The trial judge sentenced defendant to six and one-half years in prison, with an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2. The court also granted the State's motion to dismiss the two counts on which the jury deadlocked.

Defendant raised nine claims on direct appeal. See State v. Morgan, 423 N.J. Super. 453, 464-65 (App. Div. 2011). The Appellate Division rejected each argument and affirmed the convictions. We address two points that relate to defendant's appeal before this Court: her challenge to the two ex parte communications between the trial court and the jury, and her argument that it was error to allow the jurors to take home written jury instructions. Id. at 465.

The appellate panel disapproved of the trial judge's ex parte communications with the jury "in the strongest possible terms." Id. at 467 (citation and internal quotation marks omitted). It then considered whether the communications were prejudicial. Ibid. As to the discussion on March 3, the panel noted that the contact "addressed only innocuous scheduling issues" and could not "have caused the jury to reach a result it otherwise may not have reached." Id. at 468.

The panel next considered the discussion on February 28, when the trial court allowed the jury to take home written jury instructions. The panel observed that a "strict reading" of the

8

relevant court rule, R. 1:8-8, "leans in favor of [a] lack of authority because the Rule only permits the jury to take the court's written instructions into the jury room, not home with them over a weekend." Id. at 471. Nonetheless, the panel did "not discern a per se impediment to permitting the jury to take all or parts of the charge outside the jury room." Id. at 473. The Appellate Division cautioned against that practice, though, because it "leaves the deliberative process needlessly vulnerable to a variety of potential problems." Ibid.

The panel declined to reverse defendant's conviction for a number of reasons: it found "no evidence . . . that anything untoward actually happened"; the trial judge gave specific cautionary instructions; and, after receiving the charge on attempt, robbery, and theft, the jury acquitted defendant of attempted murder and reached no verdict on the robbery count. Id. at 472-73.

We granted certification limited to the following issues: "whether the trial court erred[] by engaging in ex parte communication with the deliberating jury" and "in permitting the jurors to take written jury instructions home with them to review over the weekend." 210 N.J. 477 (2012). We also granted leave to appear as amicus curiae to the American Civil Liberties Union of New Jersey (ACLU).

Defendant argues that deliberating juries are not allowed to bring home written jury instructions under <u>Rule</u> 1:8-8. For support, she cites the language of the <u>Rule</u> at the time of trial: "The court, in its discretion, may submit a copy of all or part of its instructions to the jury for its consideration in the jury room." <u>R.</u> 1:8-8(a) (effective Sept. 1, 2006). Defendant asks this Court to establish a per se rule that would bar jurors from taking home jury instructions in light of the dangers that practice presents.

Defendant also asserts that her convictions should be reversed because she was prejudiced by the trial court's improper ex parte communication with the jury. She claims that because defense counsel was unaware of the conversation, defendant had no opportunity to object to the written instructions going home for the weekend, or to ask the court to conduct a voir dire of the jurors to ensure that no outside sources influenced their verdict.

The State claims that allowing a jury to take home written jury instructions does not violate any rule or case law and that trial judges have discretion to follow that course. In addition, the State notes that the trial court admonished the jury not to look at any outside sources.

The State also argues that the ex parte communications between the trial judge and the jury did not prejudice defendant.  The discussions were recorded, and the State contends that they did not address anything substantive.  In addition, the State points to the verdict -- an acquittal on attempted murder and a hung jury on the robbery charge -- and argues that "the arrangement ultimately worked to defendant's benefit."  As a result, the State contends that defendant's convictions should not be overturned.

The ACLU urges this Court to find that there is no basis to allow jurors to ever take home any portion of criminal jury instructions.  According to the ACLU, this practice "threatens the deliberative process by exposing it to outside influences." The ACLU also submits that the practice subverts the jury's collective deliberative process by encouraging individual deliberation.

In addition, the ACLU challenges the judge's discussion of contested issues with the jury outside of counsel's presence. The ACLU concludes that, because in this case the court discussed an important issue as to which counsel's input was critical, prejudice must be presumed and the verdict overturned.

### III.

Ex parte communications between a trial judge and a jury are improper and must be avoided.  There is no place for them in

11

the trial process.  The court rules make clear that "[a]ll trials . . . shall be conducted in open court unless otherwise provided by rule or statute."  R. 1:2-1.  That approach extends to jury deliberations in the following way:  although juries of course deliberate in private, see generally State v. Neulander, 173 N.J. 193, 210-14 (2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1281, 154 L. Ed. 2d 1027 (2003), any proceedings that take place during deliberations, such as readbacks, should be on the record, in open court, with counsel and the accused present, State v. Basit, 378 N.J. Super. 125, 131 (App. Div. 2005); see also State v. Brown, 275 N.J. Super. 329, 331-32 (App. Div.), certif. denied, 138 N.J. 269 (1994).

Trial courts have the responsibility "to protect jurors and their deliberations from outside influences that threaten to taint the verdict."  State v. Hightower, 146 N.J. 239, 263 (1996).  At the same time, judges must be especially careful about their own contacts with the jury and should not interact with jurors outside the presence of counsel.  See Basit, supra, 378 N.J. Super. at 131 ("[A] judge must scrupulously avoid engaging in his own ex parte and unrecorded communications with the jury."); Brown, supra, 275 N.J. Super. at 332 ("A judge should avoid engaging in any ex parte communications with the jury regarding its deliberations."); Guzzi v. Jersey Cent. Power & Light Co., 36 N.J. Super. 255, 264 (App. Div.) (citing

12

Leonard's of Plainfield, Inc. v. Dybas, 130 N.J.L. 135 (Sup. Ct. 1943)) (noting such contacts are forbidden), certif. denied, 19 N.J. 339 (1955). There are no exceptions. In fact, because the dangers associated with ex parte contacts "are so great," judges should not ask counsel to consent to such interactions "under any circumstances." Brown, supra, 275 N.J. Super. at 332.

The United States Supreme Court has outlined some of the dangers inherent in ex parte communications:

> Any ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error. . . . [E]ven an experienced trial judge cannot be certain to avoid all the pitfalls inherent in such an enterprise. . . . [I]t is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting. Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury -- all the more so when counsel are not present to challenge the statements.
>
> [United States v. U.S. Gypsum Co., 438 U.S. 422, 460, 98 S. Ct. 2864, 2885, 57 L. Ed. 2d 854, 884 (1978).]

A "judge's improper entry into the jury room does not automatically require" reversal of a conviction. Brown, supra, 275 N.J. Super. at 332. In one of this Court's earliest decisions, it outlined three ways to evaluate a judge's inappropriate communications with a jury: (1) if the record

13

affirmatively reveals that the defendant was prejudiced, reversal is required; (2) if the record does not show whether the ex parte contact was prejudicial, prejudice is presumed; and (3) if the record affirmatively discloses "that the communication had no tendency to influence the verdict," the outcome should not be disturbed. State v. Auld, 2 N.J. 426, 432 (1949).

In other words, an adequate record of the contact may be able to dispel a presumption of prejudice. Compare Brown, supra, 275 N.J. Super. at 331 (finding judge's ex parte contacts with jury "had no capacity to prejudice defendant" when purpose of contact was to clarify meaning of jury question and, after judge emerged from jury room, he summarized communication in open court in front of jury, counsel, and defendant), with Basit, supra, 378 N.J. Super. at 135-36 (finding record did not overcome presumption of prejudice when trial judge's ex parte comments to jury "not only went unrecorded when given but were never memorialized in later proceedings"). To be clear, though, we do not in any way endorse ex parte communications between a trial judge and a jury.

IV.

The court rules are similarly clear about whether jurors may take written jury instructions home. They may not. Jurors may only review written instructions in the jury room. At the

14

time of trial, Rule 1:8-8(a) provided, in relevant part, that "[t]he court, in its discretion, may submit a copy of all or part of its instructions to the jury for its consideration in the jury room." (Emphasis added). The appellate panel correctly noted that a strict reading of the Rule suggests that there is no authority to permit jurors to take written jury instructions outside the jury room. See Morgan, supra, 423 N.J. Super. at 471.

This Court addressed Rule 1:8-8 in State v. O'Brien, 200 N.J. 520 (2009). In O'Brien, a jury asked for a written copy of the judge's instructions at the close of trial. Id. at 533. The trial judge declined and offered general reasons why he did not favor the practice. Ibid. On appeal, this Court concluded that "a judge should make an individualized decision regarding the submission of written instructions to the jury on the basis of what is before him and not on any preconceived policy rationale." Id. at 541. To consider "a more detailed standard to guide judges in exercising their discretion" in this area, the Court referred the matter to the Civil and Criminal Practice Committees. Ibid.

The Criminal Practice Committee released its recommendations in a report dated March 28, 2012. See Report of the Supreme Court Criminal Practice Committee on Distribution of Written Instructions to the Jury (Mar. 28, 2012) (Committee

15

Report).  Among other proposals, the Committee recommended that Rule 1:8-8 be revised to require that "written jury charges . . . be provided to the jury in all criminal cases, unless doing so would result in undue delay."  Id. at 21.  The Committee also recommended that the entire charge, not part of it, be given to the jury.  Id. at 27.  In addition, the Committee addressed the Appellate Division decision in this case and recommended that "jury instructions should not be taken home."  Id. at 28.  The Committee suggested a minor change in language to highlight that point.  Id. app. at 2.

We revised the Rule but retained the same language about where juries may review written instructions.  The Rule repeats the earlier admonition:  "The court, in its discretion, may submit a copy of its instructions to the jury for its consideration in the jury room."  R. 1:8-8(a) (effective Sept. 4, 2012).[2]  In light of the explicit language in the earlier version of the Rule, it was not necessary to add that jurors may not take jury instructions outside the jury room during deliberations.  To the extent there is any uncertainty on this issue, we emphasize that copies of written jury instructions are for use in the jury room -- and only in the jury room.

---

[2]  Other aspects of Rule 1:8-8 were also changed at the same time.  See R. 1:8-8 (effective Sept. 4, 2012).  None of the additional changes relates to the issues in this case.

16

Compelling reasons support that approach. As noted earlier, it is important to insulate the jury from influences that could undermine its deliberations. State v. Corsaro, 107 N.J. 339, 346 (1987). As the appellate panel and other courts have highlighted, allowing jurors to take home written instructions increases the risk that jurors will conduct independent research about the law or the facts of the case on the Internet or in some other manner. Morgan, supra, 423 N.J. Super. at 473; see also United States v. Esso, 684 F.3d 347, 351 (2d Cir.) (cautioning against jurors taking home indictment or other trial materials), cert. denied, 568 U.S. ___, 133 S. Ct. 562, 184 L. Ed. 2d 365 (2012). In addition, jurors with written instructions in hand might be more inclined to discuss the trial with family members or friends. Esso, supra, 684 F.3d at 351; Morgan, supra, 423 N.J. Super. at 473.

It is also essential that jurors deliberate as a collective group and reach a verdict through the exchange of views among all members of the jury. "[T]he essence of jury deliberations is the joint or collective exchange of views among individual jurors." Corsaro, supra, 107 N.J. at 349; accord United States v. Resko, 3 F.3d 684, 689 (3d Cir. 1993). Interactions that take place when a single juror tries to persuade others are critical to that process. State v. Trent, 79 N.J. 251, 256 (1979) (quoting People v. Collins, 552 P.2d 742, 746 (Cal.

17

1976)).  If some jurors pore over the jury charge at home, and form ideas about the case on their own as a result, the balance of the group deliberative process may be upset.  See Morgan, supra, 423 N.J. Super. at 473.

Of course, we recognize that jurors may think about a trial when they leave the courthouse, and those with better memories might recall and consider an instruction outside of the jury room.  See People v. Ledesma, 140 P.3d 657, 722 (Cal. 2006); see also Esso, supra, 684 F.3d at 351.  That unavoidable reality, though, does not weigh in favor of giving jurors written instructions to take home.

V.

We now apply the above principles to the facts of this case.  Both ex parte discussions with the jury were plainly improper, and like the Appellate Division, we caution judges to avoid them at all costs.  In light of the errors, we examine the record for prejudice.

The ex parte communication on March 3, 2008 raises a minor issue, and we dispense with it first.  The brief exchange was recorded, and the transcript reveals that the discussion related only to ministerial scheduling matters.  The record therefore affirmatively shows that the communication had no tendency to influence the verdict.  See Auld, supra, 2 N.J. at 432.

18

The ex parte communication on February 28, 2008 raises two concerns. Not only was the contact itself improper, but it was also error for the court to allow the jury to take home copies of the charge. Moreover, because the court handled the jury's request outside the presence of counsel, defendant had no opportunity to object.

We can infer from the record that both counsel were familiar with the materials sent home. Earlier in the afternoon, the jury asked "for the law to be explained . . . regarding Count 2" -- the robbery charge. In response, the trial judge discussed the jury's note first with counsel and then with the jury and counsel in open court. The judge told the jurors that she would send them written copies of the robbery, attempt, and theft instructions, and neither counsel voiced an objection or asked to see the document.

An hour later, the judge granted the jury's request to take the charges home. That ex parte discussion was recorded and transcribed as well. The record discloses that the court also cautioned the jurors "not to look up any words in the dictionary or anything like that," not to "look for definitions of any terms," and not to "do any research, read anything, hear anything, [or] discuss [the case] at all" until deliberations resumed. The judge specifically "limited" the jury "to the four corners of" the charge. At various times throughout the trial,

19

the court gave similar warnings and directed the jurors not to discuss the case with others, not to do their own research, and to avoid outside sources of information.  We presume that the jurors followed those instructions.  State v. Burns, 192 N.J. 312, 335 (2007) (citation omitted).  In addition, we agree with the Appellate Division that the record contains no evidence that the jury behaved in an "untoward" manner or that any outside influences infected the verdict.  See Morgan, supra, 423 N.J. Super. at 473.

We also consider what the jury's verdict reveals about any prejudice.  The jury acquitted defendant of attempted murder and reached no verdict on the robbery count.  The portions of the charge that the jurors took home related to robbery, theft, and attempt and were directed to the jury's question about the robbery offense.  We recognize that there was some theoretical overlap with the second-degree aggravated assault charge, which also involved attempt.  The jury convicted defendant of that count.

Because of the nature of the crime, though, we see little risk that the conviction for aggravated assault stemmed from the attempt instruction.  Second-degree aggravated assault requires proof that defendant caused serious bodily injury or attempted to cause serious bodily injury, see N.J.S.A. 2C:12-1b, and the judge instructed the jury accordingly.  The proofs at trial,

20

however, revealed that the case involved an actual shooting, and the victim's injuries were not in dispute. Plus the verdict sheet referred only to whether defendant caused serious bodily injury and did not mention "attempt." In addition, in light of the evidence presented, the jurors had to decide whether the victims were more credible than defendant, or the other way around, and that decision was not affected by the jury instructions in question. As a result, it appears that the instruction on attempt had no tendency to affect the conviction for aggravated assault.

We therefore find from the record that the second ex parte conversation also had no tendency to influence the verdict. See Auld, supra, 2 N.J. at 432. In other words, the record affirmatively overcomes any presumption of prejudice that might otherwise exist. For that reason, we do not reverse defendant's convictions. Cf. Esso, supra, 684 F.3d at 352 (discouraging practice yet finding no structural error when jurors took home indictment and received appropriate limiting instructions).

Notwithstanding the outcome here, we caution trial judges to avoid the pitfalls this case presents. Judges should not engage in ex parte communications with jurors, even on innocuous scheduling matters. Also, written jury instructions are for the jury's use during deliberations only in the jury room.

21

VI.

For the reasons stated above, we affirm the judgment of the Appellate Division.


JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.

SUPREME COURT OF NEW JERSEY

NO.   __A-119__               SEPTEMBER TERM 2011

ON CERTIFICATION TO       Appellate Division, Superior Court

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

           v.

SHAFFONA MORGAN,

       Defendant-Appellant.

DECIDED        August 8, 2013

            Chief Justice Rabner          PRESIDING

OPINION BY     Chief Justice Rabner

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |