RUTH BRANDIMARTE AND HENRY BRANDIMARTE, PLAINTIFFS-APPELLANTS, v. HUGH B. GREEN, DEFENDANT AND BRUCE GREEN, DEFENDANT-RESPONDENT.

Argued April 24, 1962—Decided June 25, 1962.

*Mr. Thomas T. Warshaw* argued the cause for the plaintiffs-appellants (*Mr. Louis M. Drazin,* attorney; *Mr. Thomas T. Warshaw* on the brief).

*Mr. F. Willaim Sutlon* argued the cause for the defendant-respondent (*Messrs. Sutlon, Yoder & Ward,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.   The plaintiffs Ruth Brandimarte and her husband Henry Brandimarte sued the defendants Bruce Green and his father Hugh B. Green for personal injuries sustained by Mrs. Brandimarte when she, while walking, was struck by a bicycle operated by Bruce. The action was tried before a jury in the Ocean County Court. At the close of the plaintiffs' case the action against the father was dismissed. After the three-day trial was concluded, the jury returned a verdict in favor of Bruce. Thereafter the plaintiffs moved for a new trial on the ground that the jurors were influenced by extraneous information. After a hearing at which evidence including the testimony of eleven jurors was presented, the trial court denied plaintiffs' motion. The plaintiffs appealed to the Appellate Division and while the appeal was pending there we certified it on our own motion.

The record reveals that the day after the jury returned its verdict, the court clerk of the judge who presided at the trial, informed the judge of extraneous events which might have influenced the jury in reaching its verdict. The judge directed him to relate this information to plaintiffs' attorney and later gave the attorney permission to interview members of the jury. The attorney proceeded to interview several jurors and others who might have knowledge of the reported events. As a result of his investigation, he moved for a new trial on the grounds that "the verdict of the jury is tainted by reason of the misconduct of an agent or employee of Insurance Carrier of the defendants and for such other reasons as the Court may deem just and proper."

The affidavit of the plaintiffs' attorney together with affidavits and statements taken from those interviewed was submitted with the motion. According to the attorney's affidavit, Mr. Ryan, a representative of the defendant's insurance carrier, had been circulating among members of the general jury panel during the time the action was being tried and making statements to the effect that the defendant was uninsured. The affidavit further stated the members of the general panel and the members of the jury hearing the action mingled during recess periods. A statement taken from one of the jurors contained the following:

"When we went into the small room to decide the case, some of the members discussed insurance and somebody said that there wasn't any insurance protection. As a matter of fact, I heard different jurors say there was no insurance."

After receiving notice of the motion, the defendant's attorney obtained permission from the trial judge to examine the members of both the jury and the general panel; he was also given permission to subpoena the jurors to appear at the hearing on the motion.

At the hearing the defendant moved to strike the statements submitted by the plaintiffs because they were not in

proper affidavit form as required by *R. R.* 4:44–4. The trial judge granted defendant's motion, but before doing so, stated the question was "moot"; since most of the jurors and some of the general panel members were in court, he said he was going to hear testimony on the subject and not rely upon affidavits and statements. However, during the examination of the jurors, the trial court, upon defendant's objection, refused to permit any juror to testify whether any statements pertaining to the defendant's insurance protection were made during the jury's deliberations. Typical of the questions asked by the plaintiffs and prohibited by the court is the following:

"Now, when you walked in there [jury room], did you hear anything said about the presence or the absence of liability insurance coverage for the Green boy?"

It was established that the defendant was insured and Ryan was an agent of his insurance carrier. It was also established that members of the general panel sat in the courtroom throughout the trial and that at luncheon recesses they mingled with members of the jury hearing the action. There was testimony that Ryan sat in the courtroom among members of the general panel during the last two days of the trial and mingled with them at midmorning and midafternoon recess periods. During these periods he was seen talking with "people," but it is uncertain whether they were members of the general panel. One juror testified that he had heard unidentified persons "whispering" about insurance during a recess period, but these remarks were not shown to have originated with Ryan. This was the only testimony that a juror heard the subject of insurance mentioned prior to the time the jury retired to deliberate. There was no showing Ryan made improper statements when he was in the midst of the general panel. However, the wife of the trial judge's clerk, who was also a court clerk, testified that as she was leaving the court house shortly after the jury had retired to deliberate, she

stopped to talk to two men, one a member of the general panel and the other an excused juror in the pending case. According to her, Ryan approached the three of them and said: "[T]here was no insurance involved in this case and that if they brought in a verdict against the boy, that he would have to pay it off all the rest of his life or, unless, when he reached 21, declare bankruptcy." The member of the general panel corroborated this testimony. The excused juryman could not recall the specifics of Ryan's remarks. Although Ryan admitted having the conversation, he denied making the remark attributed to him by the clerk and said she, and not he, introduced the subject of insurance into the conversation. Ryan also denied talking with any members of the jury or general panel prior to the time they retired to deliberate.

The trial judge, in denying the motion for a new trial, found that Ryan "did in fact talk about insurance" but that his statements "occurred after the jury had retired to consider its verdict," and therefore "couldn't possibly have any influence on them [jurors]." He said that his decision might be otherwise if Ryan's remarks had been made "among the members of the panel or any member of the jury before they retired," but there was no evidence to support such a conclusion.

We believe the trial judge failed to adequately investigate the matter and therefore reached a premature decision when he denied the motion. Before reaching his conclusion, the trial judge should have found out whether specific information concerning the defendant's lack of insurance protection was brought to the attention of the jurors during their deliberations.

A jury verdict "must be obedient to the court's charge, based solely on legal evidence * * * and entirely free from the taint of extraneous considerations and influences." *Panko v. Flintkote*, 7 *N. J.* 55, 61 (1951). Clearly, where the negligence of the defendant is the issue, the fact that he is insured or uninsured is irrelevant and

therefore has no place in the evidence presented to the jury. *Sutton v. Bell,* 79 *N. J. L.* 507 (*E. & A.* 1910). Though cautionary instructions may in some circumstances eradicate the potential harm, verdicts have been set aside and mistrials declared where in the course of the trial the fact that the defendant was insured or uninsured was brought to the attention of the jury. *Patterson v. Surpless,* 107 *N. J. L.* 305 (*E. & A.* 1930); *Dalton v. Gesser,* 72 *N. J. Super.* 100 (*App. Div.* 1962); *Haid v. Loderstedt,* 45 *N. J. Super.* 547 (*App. Div.* 1957); *Hansson v. Catalytic Construction Co.,* 43 *N. J. Super.* 23 (*App. Div.* 1956). The potential effects of such extraneous information are as great when information reaches the jury from an outside source as when it is improperly introduced during the trial of the action. Indeed, it may be greater for it then cannot be tempered by protective procedures. Regardless of the manner in which a defendant's insurance status becomes known to the jury, such information has the capacity to beget a verdict based, not upon legal proofs and the court's charge, but rather upon prejudice or sympathy for one of the litigants. Such a verdict cannot be permitted to stand if confidence in the administration of justice through the jury system is to be maintained. *Panko v. Flintkote, supra.* As was said in that case, where this court set aside a plaintiff's verdict when it was shown that a juror had knowledge of the amount of defendant's insurance policy: "In order that there may be confidence in trial by jury it is necessary that parties are to feel sure that verdicts are based upon an honest consideration of the evidence and not upon prejudice or sympathy." *Id.,* at *p.* 62. Whenever extraneous information which has the capacity to so undermine the verdict has been brought to the attention of any jurors, and the ill effects have not been cured by trial court instructions, a party has not had a fair trial and is entitled to another day in court.

[4–6] In the instant case the atmosphere was charged with the possibility that statements concerning the absence of

the defendant's insurance protection reached the jury. The trial judge was alerted to this possibility by: the statement of a juror that during the deliberations some jurors said the defendant had no insurance protection; a juror's hearing insurance mentioned during a trial recess; the false statement attributed to Ryan that the defendant was uninsured; Ryan's mingling with the general panel who in turn mingled during recesses with the jury hearing the action. In the aggregate, these occurrences created an aura of irregular influences sufficient to require the trial judge to conduct a comprehensive investigation so that he could determine whether information of the defendant's lack of insurance protection was brought to the attention of the jurors inside as well as outside the jury room. As we said in *State v. Levitt,* 36 *N. J.* 266, 271 (1961):

> "Where there are sufficient allegations that the jury's verdict was discolored by improper influences, the trial judge should investigate the truth of the charges so that he may determine whether a new trial is warranted. And it makes no difference whether the improper influences occurred inside or outside the jury room. [Citing cases.] Though the trial judge cannot examine the thought processes of jurors in reaching their verdict, he can receive jurors' evidence as to the existence of conditions or the occurrence of events to determine whether they showed an adverse prejudice bearing on the verdict."

The important concern was no longer whether Ryan was the source of the statements, but instead whether definite information (defendant's insurance status) which could have a tendency to improperly influence the jury was introduced into the jury room. Plaintiffs' motion for a new trial did not limit the investigation to Ryan. We believe the jurors should have been permitted to testify whether statements regarding the defendant's insurance status had been made during the jury's deliberations. If the trial judge found that even one juror possessed definite information (true or false) that the defendant lacked insurance protection, or held himself out to his fellow jurors as possessing such

definite information, the plaintiffs would be entitled to a new trial. This, of course, does not mean that an inquiry may be made as to whether jurors speculated about the existence of insurance. Such an investigation would not be directed toward determining whether extraneous information had reached the jury, but rather would be a probing of the mental processes of the jurors. If it develops that the jurors in this case merely speculated about insurance, rather than that a juror stated he had definite knowledge of the defendant's insurance status, the verdict should stand.

Probing into a jury room is too delicate a task to be carried out in the framework of adversary proceedings. Although counsel for all sides should be present, we think the trial judge should be the primary questioner of the jurors. See *State v. Levitt, supra*, at *p.* 271. We believe this is the best way to safeguard the jurors' rights to free and private discussion and the litigants' rights to a fair trial.

The order of the trial court is vacated and the cause is remanded for further proceedings consistent with this opinion.

HALL, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.