906 A.2d 504 (2006)
388 N.J. Super. 149
STATE of New Jersey, Plaintiff-Respondent,
v.
Anthony WALKINGS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted July 31, 2006.
Decided September 21, 2006.
*505 Yvonne Smith Segars, Public Defender, attorney for appellant (Jane M. Personette, Designated Counsel, of counsel and on the brief).
Zulima V. Farber, Attorney General, attorney for respondent (Robyn B. Mitchell, Deputy Attorney General, of counsel and on the brief).
Before Judges WEFING, C.S. FISHER and GRALL.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, defendant contends, among other things, that the trial judge erred by denying his motion for a new trial or, in the alternative, by failing to conduct a hearing into a juror's concerns about the jury's deliberations first expressed by this juror in a post-verdict communication with the prosecutor's office. Because we agree that the trial judge should not have explored the juror's concerns through his own ex parte, unrecorded discussions, we remand for further proceedings.

I
Defendant was indicted and charged with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); fourth-degree aggravated *506 assault on a police officer, N.J.S.A. 2C:12-1(b)(5); and third-degree resisting arrest by using or threatening to use physical force or violence, N.J.S.A. 2C:29-2(a)(1). Following a two-day trial, defendant was convicted of all these charges except aggravated assault.
The trial judge granted the State's motion to sentence defendant to an extended term pursuant to N.J.S.A. 2C:43-6(f), and, after merging the CDS convictions, the trial judge imposed a ten-year term of imprisonment, with a five-year period of parole ineligibility. The judge also sentenced defendant to a concurrent eighteen-month term of imprisonment on the resisting arrest conviction. Mandatory penalties and assessments were imposed, including a suspension of defendant's driving privileges for six months.
On appeal, defendant has raised the following arguments for our consideration:
I. THE COURT BELOW ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL OR, ALTERNATIVELY, FOR FAILING TO CONDUCT A POST-CONVICTION INTERVIEW OF A JUROR.
II. THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL.
III. THE COURT BELOW VIOLATED THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
IV. THE TRIAL COURT ERRED IN FAILING TO CREDIT DEFENDANT WITH ANY MITIGATING FACTORS.
We find that the arguments contained in Points III and IV are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). For the reasons that follow, we reject defendant's argument that the trial judge should have granted a mistrial due to the admission of certain testimony provided by Detective Donna Green, as asserted in Point II, but we remand for further proceedings regarding the post-trial communications with a juror, as argued in Point I.

II
In arguing that the trial judge should have granted a mistrial, defendant complains that the judge erroneously permitted, over his objection, Detective Donna Green  a fact witness who had taken the alleged narcotics to the State lab for testing  to render an expert opinion on whether the bagging of the alleged narcotics was consistent with an intent to distribute instead of mere possession.
The record reveals, however, that after the assistant prosecutor asked Detective Green about the physical appearance of the drugs and how they were bagged, the assistant prosecutor also asked whether "this [is] kind of consistent with somebody who would have drugs for distribution," to which Detective Green replied, "yes." As that answer was given defense counsel objected, and, immediately following that objection, the following occurred at sidebar:
[DEFENSE COUNSEL]: There's no expert report, there's none of that. I told [the assistant prosecutor] that I would stipulate to the lab report.
[ASSISTANT PROSECUTOR]: I need her to get in the lab report, that the lab  that there is a lab report. I have to introduce it.
[DEFENSE COUNSEL]: I stipulated to it. I don't know why he called Ms. Green, perhaps it was to get information 
THE COURT: Well, the request form 
[DEFENSE COUNSEL]: You know, I think it is objectionable. In fact, I move for a mistrial now, the fact he even asked the question 

*507 THE COURT: The question that was asked was, Is this the kind of bag that someone would use?
[DEFENSE COUNSEL]: Is this consistent with drug distribution? I think was the question.
THE COURT: I'll have to have Ms. Moore 
(Whereupon, the pending question is read back to the Court.)
THE COURT: Go ahead.
[DEFENSE COUNSEL]: [I] [m]ove for a mistrial.
THE COURT: Are you saying that that would require a report?
[DEFENSE COUNSEL]: I think it [requires] an expert report, and I think if I get it, I have an opportunity to bring somebody in that would say [that possession of] five bags [is] not consistent with drug distribution.
The point defense counsel raised during the sidebar was not without substance. The question to which defendant objected arguably called for an expert opinion that had not been noticed in the proper fashion. However, the sidebar continued and resulted in defense counsel acceding to the assistant prosecutor's rephrasing of the question. In response to a discussion as to what the assistant prosecutor was attempting to elicit, the following took place during the same sidebar conference:
[DEFENSE COUNSEL]: No. No. The question was if the question is, Are these bags  and I probably would not have an objection  are these bags, little zip-lock baggies consistent with drug distribution? Okay. But 
THE COURT: Consistent with the kind that are used.
[ASSISTANT PROSECUTOR]: I'll rephrase it.
THE COURT: That's what I thought he asked.
[DEFENSE COUNSEL]: That[] wasn't the question.
THE COURT: I guess it depends on  on your point of view. I took the question to mean just that. I'll ask him to clarify.
[DEFENSE COUNSEL]: If that's just the bags  type of bags used for people who that distribute drugs, they could be for possession, someone purchasing them, someone selling them.
THE COURT: Possession or distributing. I will guess to be fair.
With that, the sidebar ended, and the assistant prosecutor asked Detective Green the following questions:
Q. Obviously, you weren't there when this happened, right, we know that?
A. No.
Q. But the way these bags  as they are, that's consistent with drugs that are packaged for distribution, or I guess somebody could also after purchasing them could possess them that way, right?
A. Yes.
Defense counsel did not object to those questions. As a result, we are satisfied that any objection defendant may have had to Detective Green's subsequent testimony regarding the bags that contained the CDS in question was waived by his counsel's failure to object. Even if these few questions permitted Detective Green to give testimony that was of an expert nature that the State failed to give notice of, defendant's failure to object requires that we view this testimony pursuant to the plain error standard. R. 2:10-2. We are abundantly satisfied that the admission of this testimony failed to "cut mortally into the substantive rights of the defendant." State v. Shomo, 129 N.J. 248, 260, 609 A.2d 394 (1992). Whether this brief testimony should have been admitted was *508 a matter left to the discretion of the trial judge. State v. Fortin, 178 N.J. 540, 591, 843 A.2d 974 (2004). We find no abuse in the exercise of the judge's discretion, particularly since defendant acquiesced by failing to object when the question was rephrased after the sidebar had ended.

III
We lastly turn to the most troublesome issue raised by defendant. A short time after the verdict was rendered, a juror left a voice mail message for the assistant prosecutor who did not return the call but instead gave the message to an investigator. The investigator telephoned the juror, advising that their conversation was being taped and that the assistant prosecutor could not speak to him, but would refer the fact that he called to the appropriate authority. The assistant prosecutor referred these circumstances to the trial judge by letter; a copy of the letter was also sent to defense counsel.[1]
Defendant filed a motion seeking a new trial urging, among other things, the significance of the juror's attempt to communicate some concern about the jury's deliberations.[2] The following argument regarding this aspect of the motion contains the only information provided on appeal regarding these circumstances:
[DEFENSE COUNSEL]: The first issue is this issue with the juror. I know your Honor received a letter cc.'d to me generated from [the prosecutor's office]. The juror contacted [the assistant prosecutor] regarding this matter, left a message. Basically, I think you have a transcript of that, as well,[3] indicating that something was almost going to happen or something in regard to that. And  well, let me just read it. It says, ["]Hi, Joe, I am Wayne Miller. I am a psychologist and I was on the panel this morning. Something happened on the jury that almost destroyed the whole thing in the process. This was relative to the outcome of one of the members there. Anyway, I would rather give you this in person.["] So I think the first thing we should do, Judge, is have that juror come in and explain.
THE COURT: No, I talked to the juror.
[DEFENSE COUNSEL]: Well, I wasn't aware of that.
THE COURT: I talked to the juror by telephone, and what the juror essentially described to me was the deliberative process, where certainly they were not unanimous to the point of only one of them disagreeing with guilt, and then, ultimately, that juror agreeing, so there was nothing that would border on not even close to jury misconduct. It was something in my view that would not require the juror to come in and testify before the Court or otherwise.
[DEFENSE COUNSEL]: I wasn't aware of that, Judge, but I take it from your indication the jury was hung, and then after further deliberations 
THE COURT: I wouldn't say hung because there was agreement. You could say that at every step of the way during the deliberation process 
[DEFENSE COUNSEL]: But 
THE COURT:  there was disagreement.
[DEFENSE COUNSEL]: There was disagreement, initially, and 

*509 THE COURT: Then there was agreement.
[DEFENSE COUNSEL]: Then there was agreement. As we would see that his mind what conversed or his mind was changed by whatever took place in the jury room. I know I wasn't present. [The assistant prosecutor] wasn't present, but I know the juror called [the assistant prosecutor] and not I and called him Joe, so I mean that to me gives me some concern.
. . . .
THE COURT: . . . I thought I discussed the fact of my having talked to the juror with you, and if I didn't I certainly apologize, but I thought I did.
. . . .
[ASSISTANT PROSECUTOR]: . . . The letter issue arises after I think [defense counsel left] for vacation, the phone call from the juror called my office, left a message on my voice mail. I had no idea, had he not said he was on the jury, I would not have recognized his name, his voice or anything of that nature. I immediately isolated myself from that.
I spoke to the First Assistant, advised him of the problem, had [an investigator] advise the juror that the conversation was being taped, that we couldn't speak to him about it, it would be inappropriate, but we would refer to it the appropriate authority, which we thought your Honor, of course, was the proper authority. We referred it to you with a copy of the transcript.[4] It was, as your Honor points out, it was very innocuous. It was the deliberation process that I assume that juries go through. Sometimes you have a split. This time it was a split for a short period of time, and then they all agreed on guilt. And it was very innocuous, and I think maybe the juror just felt it was a little too important than it was for a minute there.
. . . .
THE COURT: As to the juror  my telephone conversation with that juror really just was the juror recounting a dynamic of what jury deliberations are all about, a concern that there was  at least some concern on the part of that juror that a result would not be reached, and, of course, concluded with the fact that there was a unanimous verdict ultimately. There is no showing of any tampering of any kind. That's not even suggested by any stretch of the imagination. The phone call to the prosecutor said nothing about that. This was simply, perhaps, someone inexperienced in the experience of jury deliberations who was retelling their account, so it didn't even border on the kind of information that I thought would require the Court to expose the juror and the jury deliberative process to scrutiny, and so for that reason I took no further action.
As can be seen, the above colloquy does not clearly reveal the juror's precise statements or otherwise illuminate the juror's concerns. Additionally, we are greatly troubled by the trial judge's ex parte communication with the juror.
The post-trial interrogation of jurors has proven to be a thorny problem. The Supreme Court has said that "calling back jurors for interrogation after they have been discharged is an extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct." State v. Koedatich, 112 N.J. 225, 288, 548 A.2d 939 (1988) (quoting State v. Athorn, 46 *510 N.J. 247, 250, 216 A.2d 369 (1966)). As further explained by the Court, "investigations into secret jury deliberations should not be readily used to invalidate verdicts because `disappointed litigants would be encouraged to tamper with jurors, to harass them and to employ fraudulent practices in an effort to induce them to repudiate their decisions,'" ibid., and because "secrecy surrounding jury deliberations is necessary not only to prevent the unsettling of verdicts, but also as an aid to the deliberative process itself," State v. LaFera, 42 N.J. 97, 105, 199 A.2d 630 (1964). The Court has recognized exceptions to this rule, explaining that inquiry should occur when required by the "plainest principles of justice." State v. Athorn, supra, 46 N.J. at 251-52, 216 A.2d 369.
Here, the record contains only the broadest generalizations about the content of the juror's communications. The lack of materials that ought to be in the appendix and the lack of specificity in the judge's description of his communications with the juror greatly hamper our ability to determine whether a hearing should have been conducted regarding the juror's concerns. The record does not present a clear description of the content of the juror's communications to the prosecutor's office or what was said during the judge's ex parte interview of him. Accordingly, we cannot know, based on our review of this record, whether the juror's concerns implicate the "plainest principles of justice." We remand for a further exploration of the issues, including the creation of a record that would disclose all the communications between and among the juror, the prosecutor's office and the trial judge.
We also take this opportunity to express our concerns about the trial judge's ex parte and unrecorded communication with the juror. The lack of a recording of the conversation precluded the State and the defendant from securing a full understanding of what transpired. And the fact that the conversation occurred out of the presence of the defendant and his counsel may have  depending upon whether the remand proceedings can provide a sufficient recreation of what occurred  imperiled defendant's due process rights. Our appellate courts have repeatedly condemned judges' ex parte communications with deliberating jurors. See State v. Basit, 378 N.J.Super. 125, 131-35, 874 A.2d 1122 (App.Div.2005), and cases cited therein; see also Annotation, Post-Retirement Out-of-Court Communications Between Jurors and Trial Judge as Grounds for New Trial or Reversal in Criminal Case, 43 A.L.R.4th 410 (1986). Although the controversies discussed in the existing case law in this State relate to communications occurring during the course of deliberations, and although we are aware of only one decision, from another jurisdiction, which considered the propriety of a post-verdict, ex parte communication between judge and jury, see Harris v. United States, 738 A.2d 269, 278-81 (D.C.App.1999),[5] we see no principled reason for permitting ex parte communications concerning the jury's deliberations once a verdict has been rendered and the jury discharged.
*511 A criminal defendant has the right to be present at every critical stage of the proceedings, State v. W.A., 184 N.J. 45, 875 A.2d 882 (2005), including a post-verdict discussion between a judge and juror of the sort that occurred here. No matter how innocuous the judge may have considered the juror's concerns  and we note that the judge did not come to the conclusion that the juror's concerns were insubstantial until after the ex parte communication; he apparently had determined that the juror's initial communication to the prosecutor's office was sufficiently troubling and required further examination or else we assume he would not have initiated the ex parte communication  no communication should have taken place without the defendant having been given notice of and an opportunity to be heard and to be present at any such communication between the judge and the juror.
In summary, because of the limitations placed upon our ability to fairly review the significance of the juror's concerns about the deliberative process, we remand for further proceedings. A record must be made of all the communications between the juror and the prosecutor's office, the prosecutor's office and the judge, and the judge and the juror. The judge should set forth as complete a recitation of what he and the juror discussed as is possible. The juror may also be called as a witness regarding what it was he discussed with the prosecutor's office and with the judge. We will retain jurisdiction in order to eventually determine whether the information the juror provided or whether what previously occurred with regard to the communications with the juror after the verdict was rendered require a new trial. The remand proceedings shall be completed within 90 days. Defendant shall file a brief, within 30 days following the completion of the remand proceedings, regarding the significance of the findings rendered by the trial judge in this regard; defendant shall also file at the same time a supplemental appendix containing all further items necessary for our review of the matter, including those items which were inappropriately omitted from original appendix. The State shall file a supplemental brief within 30 days of the filing and service of defendant's brief.
Remanded. We retain jurisdiction.
NOTES
[1] Unfortunately, a copy of this letter was not included in the appendix.
[2] Defendant also neglected to include these motion papers in the appendix.
[3] We assume the transcript referred to is of the voice mail left on the assistant prosecutor's telephone. Defendant also failed to provide a copy of this transcript in his appendix.
[4] This and other comments made during this colloquy suggest there are transcripts of both the juror's original voice mail and the investigator's discussion with the juror. No such transcripts are contained in the appendix.
[5] In Harris, after the jury had rendered its verdict, the judge invited any interested jurors to discuss with him "anything you'd like to tell me or if you'd like to complain about the waiting time or complain about the lack of amenities in the jury room or anything that you wish to see me about." 738 A.2d at 276. Later, at defendant's sentencing, the judge advised counsel that he was told at this post-verdict, ex parte session that during deliberations one juror had informed the other members that "under no circumstances would he ever return a verdict of first-degree murder," and that because they did not want defendant "back on the street," the jury had "compromised on the lesser-included offense of second-degree murder." Id. at 276-77. The judge then stated, after describing what had occurred, that the sentence he imposed was based upon his own views and was not impacted by this extra-judicial information. Ibid. On appeal, even though the court concluded that the judge had acted with "good intentions" in conducting this ex parte survey about the jurors' experiences with the judicial system, "the judge inadvertently initiated and subsequently engaged in prohibited ex parte communications about Harris' pending case during his post-verdict meeting with the jurors." Id. at 278. However, the judgment was affirmed, the court concluding there was an absence of prejudice to defendant since the trial judge had adamantly stated that the information he obtained during the ex parte proceeding had not factored into the formulation of the sentence imposed. Id. at 281.