SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Tomikia Davis v. Abbas Husain** (A-34-13) (072425)

**Argued September 24, 2014 – Decided December 23, 2014**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the circumstances under which a trial court may engage in post-verdict discussions with discharged jurors.

In November 2007, plaintiff Tomikia Davis filed a complaint against her former employer, defendant Dr. Abbas Husain. In her complaint, she alleged violations of New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, based on hostile work environment, sexual harassment, and retaliation claims. At trial, when Husain was sworn in, he raised his right hand and spoke the oath, but did not place his left hand directly on the Bible. Ultimately, the jury returned a verdict in favor of Davis in the amount of $12,500. After the verdict was rendered and the jury was discharged, but before post-trial motions were argued and the judgment was entered, the trial judge had a conversation with the jurors, outside the presence of counsel, which was not recorded. During that discussion, one juror noted that she was surprised that defendant had not placed his hand on the Bible before he testified. The judge did not make a record of the juror's observation, but later informed counsel.

Both parties subsequently filed post-trial motions. A certification by Husain, filed in support of his post-trial motion, included a brief reference to the juror's observation. At oral argument on the motion, the trial judge expressed surprise that information he had provided counsel in confidence ended up in a certification and as part of the trial record. Ultimately, the court denied Husain's motion, finding the amount allocated in the verdict fair in light of the evidence and giving no regard to the comment the juror made in reference to the fact that Husain did not touch the Bible.

After the judgment was entered, Husain appealed, raising several arguments. Relevant to the limited issue presented in this appeal as of right, he argued that the trial judge erred by failing to declare a mistrial on the basis of the juror's comment about the fact that he did not touch the Bible. In an unpublished decision, a majority of the Appellate Division panel affirmed the verdict as to this issue, holding that no manifest injustice inhered in the juror's observation and comment. Thus, the majority held that a new trial was not warranted. The dissenting judge maintained that the trial judge had violated the Code of Judicial Conduct and that the juror's observation was sufficient to warrant a new trial. Husain appealed to this Court as of right.

**HELD**: Post-verdict discussions between the court and discharged jurors are prohibited unless those discussions are part of a hearing ordered on good cause shown pursuant to Rule 1:16-1.

1. Discussions that jurors have while deliberating should remain shielded from litigants, attorneys, and the public eye. Therefore, only with the court's permission, and on good cause shown, may an attorney or litigant speak to any juror with respect to any matter relating to the case. Requesting that a jury participate in questioning following discharge should only occur after a strong showing that a litigant may have been harmed by jury misconduct. This standard balances the litigant's interest in ensuring an impartial jury with the importance of keeping deliberations secret. A judge's ability to inquire of jurors after trial is similarly limited except where Rule 1:16-1 provides good cause to do so, and then only in the presence of counsel. Generally, discussions between the trial court and jurors, without the presence of counsel, are inappropriate and improper during and after trial. (pp. 10-11)

2. Rule 1:2-1, which controls judge and jury interactions during the pendency of trial, provides that "[a]ll trials, hearings of motions and other applications, pretrial conferences, arraignments, sentencing conferences . . . and appeals shall be conducted in open court unless otherwise provided by rule or statute." However, once the jury has begun to deliberate, communications between the judge and jury, without the presence of counsel, are improper. While not every such communication that may occur between a trial court and a jury during deliberations requires reversal of the jury's verdict, such interactions have been viewed by New Jersey's courts with disapproval. (pp. 12-

1

14)

3. In <u>Ertle v. Starkey</u>, 292 <u>N.J. Super.</u> 1 (App. Div. 1996), following the denial of the plaintiffs' motion for a judgment notwithstanding the verdict, the judge informed counsel that he would be talking with the jury informally about their experience as jurors, on the record, but not in the presence of the parties or their counsel. When plaintiffs' counsel requested permission to listen to the judge's conversation with the jury, the judge denied the request. On appeal, the plaintiffs argued that the conversation with the jurors should not have been conducted in the absence of counsel and that the judge violated the <u>Code of Judicial Conduct</u> by speaking to the jury. While the panel affirmed the trial court judgment, it noted that judges should refrain from such interaction so as to avoid allegations of judicial bias. Similarly, in <u>State v. Walkings</u>, 388 <u>N.J. Super.</u> 149 (App. Div. 2006), after the defendant filed a motion contending that a juror's attempt to communicate concerns about deliberations warranted a new trial, the judge spoke to the juror off the record and without the knowledge or presence of any counsel. On appeal, the panel disapproved of the trial judge's communication with the juror, stating that the absence of any recording of the conversation precluded the State and the defendant from securing a full understanding of what had transpired. (pp. 14-17)

4. The <u>Code of Judicial Conduct</u> urges judges to perform the duties of judicial office impartially and diligently, and states that a judge should neither initiate nor consider communications concerning a pending or impending proceeding outside of the presence of counsel. As this case demonstrates, the issue of post-verdict communications between a trial court and jurors, outside of the presence of counsel, calls for an unambiguous rule. Such conversations are incompatible with our system of open and public court proceedings, in which parties' interests are protected through their presence and that of their counsel. Therefore, as part of its constitutional supervisory authority over the conduct of civil and criminal trials, the Court henceforth prohibits post-verdict communications between a trial judge and jurors outside of the presence of counsel. To the extent that judges wish to thank jurors for their invaluable service to the public trial process in which they have just participated, that should be done in open court in the presence of counsel. (pp. 18-20)

5. Despite the general disinclination to allow post-verdict inquiry of jurors, <u>Rule</u> 1:16-1 does permit a limited inquiry into the events surrounding the jury's decision to prevent injustice. Such inquiry is only permitted where a good cause showing is made that the jury's decision was tainted by misconduct. A showing of good cause includes information that is communicated to jurors – by another juror or by an outsider – that is extraneous to the issues the jury is deciding and would be sufficiently prejudicial to warrant a new trial if considered by the jury. Any investigation must be limited to the effect of the improper extraneous matter and should not include probing the mental processes of the jurors. (pp. 20-22)

6. Here, because there was no public inquiry of the juror, the record is unacceptably sparse. The way to properly handle such an inquiry depends on the individual juror's credibility. It also depends on the juror's answers to questions about the comment, what the juror may have said to other jurors, and what those jurors themselves might have expressed about the administration of the oath to Husain. However, all that is contained in the present record is the judge's comments during colloquy with counsel as part of the post-verdict motion practice. Under these circumstances, the Court is compelled to remand this matter for further proceedings to allow a proper inquiry to be conducted by the judge to whom this matter will be assigned on remand. A new judge must consider afresh the import of the juror's observation and comment, along with all other relevant factors bearing on whether a <u>Rule</u> 1:16-1 formal inquiry is warranted. (pp. 22-23)

7. The Court finds the current status of this matter troubling, given the amount of time that has passed since trial, the size of the verdict, and the fact that the problematic posture of this matter would have been avoided by seeking relief under <u>Rule</u> 1:16-1 by way of a motion for a new trial, timely filed when the trial had more recently occurred. Therefore, the Court declines to presume that prejudice occurred. All concerns appropriate to a <u>Rule</u> 1:16-1 assessment must be factored into the court's application when considering the extraordinary remedy of a grant of a mistrial. The court on remand is instructed to engage in a practical and efficient means of illuminating the facts that have been presented on appeal. (pp. 23-24)

      As to the limited issue considered in this appeal as of right, the matter is **REMANDED** to the trial court for proceedings consistent with this opinion. In all other respects, the judgment of the Appellate Division is **AFFIRMED.**

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

TOMIKIA DAVIS,

    Plaintiff-Respondent,

        v.

ABBAS HUSAIN, M.D.,

    Defendant-Appellant.


        Argued September 24, 2014 – Decided December 23, 2014

        On appeal from the Superior Court, Appellate Division.

        Lynda M. Yamamoto argued the cause for appellant.

        Deborah L. Mains argued the cause for respondent (Costello & Mains, attorneys).


    JUSTICE LaVECCHIA delivered the opinion of the Court.

    This appeal addresses a trial judge's post-verdict ex parte discussion with the jury. During the discussion, one juror commented about a witness's conduct when the witness took the oath prior to testifying. Counsel were informed of the comment. Concerns about the substance of the comment, as well as how it should have been handled, arose during post-verdict motion practice; those same concerns divided the Appellate Division majority and dissent in this appeal as of right.

1

Notwithstanding prior discouragement of such post-verdict ex parte discussions between a trial judge and jurors, the practice persists, as this matter demonstrates. To bring an end to such practices, we hold that under no circumstances may post-verdict discussions occur between the court and discharged jurors, unless those discussions are part of a hearing ordered on good cause shown pursuant to Rule 1:16-1. For the reasons that follow, we remand this matter for further proceedings.

I.

The trial in this matter focused on plaintiff Tomikia Davis's claims of sexual harassment advanced against her former employer, defendant Dr. Abbas Husain.

In November 2007, Davis filed a complaint against Husain, as well as her other employer, Dr. Mira Kheny, with whom Husain shared medical office space. The complaint alleged violations of New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, based on hostile work environment, sexual harassment, and retaliation claims. Husain and Kheny filed separate answers; Kheny subsequently settled with Davis.

The trial on the claims against Husain largely turned on credibility. Davis testified and described the alleged instances of harassment; Husain testified and denied each such incident. Husain also produced co-workers who claimed that they neither saw any incidents occur nor heard Davis complain that

they had occurred.  In particular, the following evidence was adduced at trial.

Husain conducted a private medical practice located in Merchantville, New Jersey, where he rented out a portion of his office space to Kheny for her separate medical practice.  The doctors shared a waiting area, but maintained separate exam rooms, reception areas, and file storage space.

In March 2005, Kheny hired Davis as a full-time medical assistant.  In addition, Davis cleaned Kheny's office on a part-time, one-day-a-week basis.  Husain also hired Davis, on a part-time basis, to clean his office space once a week and to substitute as his medical assistant when Husain's assistant was unable to work.

According to Davis, Husain's sexually harassing conduct began with sexual comments.  She testified that after she had been working for both Kheny and Husain for approximately six months, Husain approached her one day while she was working at her desk.  He asked for help in finding him a date, adding that he liked women with large breasts.  Davis replied that she did not help people find dates and walked away, ending further discussion.  Davis stated that she did not believe that there was any supervisor to whom she could complain who "ha[d] the power to discipline [Husain]" and she feared losing her job if she complained.  A few months later, Husain made another comment

3

about women's breasts to Davis.  Davis testified at trial that she avoided Husain as much as possible after that.

According to Davis, Husain made yet another sexually harassing statement to her when he uttered unsolicited comments about the vaginal moisture of women of different ethnicities. Davis testified that she found the experience "humiliating" and that it "scared" her because "it was the third time [and she] just didn't know what to do."

The final straw came in June 2006 when, according to Davis, she was subjected to an instance of unwanted touching.  She testified that while she was filing papers, Husain placed his hand on her buttocks.  She turned to confront him and "told him not to do that."  Husain allegedly responded, "calm down, we play like that," to which she replied, "I don't play like that." According to Davis, she was upset and Husain tried to calm her down as she gathered her belongings to leave.  She stopped working at the doctors' office shortly afterward.  This lawsuit followed.

Importantly for purposes of this appeal, when Husain was sworn in prior to giving his testimony he did not place his left hand directly on the Bible for reasons that were not addressed at the time of trial.[1]  He did raise his right hand and speak the

_____

[1] Husain's certification, submitted during post-verdict motion practice, indicates that Husain's action was based on his

4

oath.  The jury returned a verdict in favor of Davis in the amount of $12,500.

After the verdict was rendered and the jury was discharged, but before post-trial motions were argued and the judgment was entered, the trial judge conducted an ex parte discussion with the jurors, which was not recorded.  According to the judge, one juror noted during that discussion that she was surprised that defendant had not placed his hand on the Bible before he testified.  The judge did not make a record of the juror's observation, but he did inform counsel as later events reveal.

Post-trial motions were filed by both parties.  Davis filed a motion to enter judgment and fix fees, costs, and interest. She also filed a motion for a trial on punitive damages.  Husain filed a motion for a remittitur, arguing among other things that Davis was not a prevailing party because she had commented during her testimony that she was not concerned with whether she was awarded any monetary damages on her claim.  A certification by Husain filed in support of that motion by Husain's trial counsel included a brief reference to the juror's observation. At oral argument on the remittitur motion, the trial judge expressed surprise that information he had apparently provided

religious beliefs.  He states that it is his "religious belief that the left hand should never be placed on a holy book."  He also states that he is "of Indian descent and the left hand is not used for any official purpose because of our culture."

5

counsel "in confidence" would end up in a certification and as part of the trial record.

> THE COURT: What you're talking about is my sharing with the lawyers in confidence the comment that a juror made, when I spoke with the jury, expressing her surprise that your client didn't actually touch the Bible when he swore to tell the truth.
>
> . . . .
>
> . . . [T]he fact -- the fact that -- by way of what I view as my continuing responsibility to educate myself and educate the bar, I shared with counsel the fact that one of the jurors, as we were leaving, mentioned that she noticed that he didn't touch the Bible. I am not a witness. There was no one else on the jury that was affected by that, nor did anyone shake their heads, nor did anyone on the jury indicate, oh, yeah, I saw that, too, nor was there any indication that anybody else noticed that, or that it was discussed in jury deliberations.
>
> I am surprised that comment that I made out of my continuing concern for education winds up in a brief in a certification. I'm going to rule on all these applications, and then counsel can do with my rulings what they wish.
>
> . . . .
>
> . . . [Defense counsel], do you want to file a separate motion for a new trial, or do you want the Court to address is [sic] now?
>
> . . . .
>
> [DEFENSE COUNSEL]: Well, I was trying not to bring the issue up in the papers. I only wanted Your Honor to know why he didn't touch the Bible, and that's why I didn't bring it up in that motion. If that's clearly on the table I think --

6

THE COURT:  I mean, to me it's clearly on the table.

[DEFENSE COUNSEL]:  Yes.  And, quite frankly, Judge, I feel --

THE COURT:  What would be the basis for seeking a new trial?  I'm not making you do this right now.  You can go back to your office and think about it and file another motion.  I don't want to -- under the circumstances I don't want to put you in that kind of box.

. . . .

[DEFENSE COUNSEL]:  . . . I had no idea that [Husain] had a problem with his left hand, although I understand that it was out of respect for the holy books that he didn't touch the book.

THE COURT: Well, that's what his affidavit says.  If that's your basis for granting a new trial the Court's ruling is it has nothing to do with any of the decisions made by the jury, it has nothing to do with the testimony.  It was not part of the trial.  And if that's the sole basis there is no basis for a new trial.

. . . .

I'm not going to consider this as the formal application for a new trial.  I'll consider this -- if you want to file something, file something.  I'm not stopping you from filing something, but I'm ruling that that as a basis for a new trial is insignificant, unsubstantial, didn't have the capacity to cause injustice, doesn't shock the conscience.

The court denied Husain's motion for remittitur, finding the amount allocated in the verdict fair in light of the evidence, "giving no regard for the comment made by one juror

7

. . . about noticing that Dr. Husain didn't touch the Bible," and noting that "that [was] not part of their considerations." The court also adjusted the counsel fees awarded to Davis and denied Davis's separate motion for a trial on punitive damages. Husain never filed a motion for a new trial as far as the record discloses. After judgment was entered, defendant appealed, raising several arguments. Relevant to the limited issue in this appeal as of right, defendant argued that the trial judge erred by failing to declare a mistrial on the basis of the juror's comment about defendant and the Bible.

In an unpublished opinion, a majority of the Appellate Division affirmed the verdict. The panel held that no manifest injustice inhered in the juror's observation and comment, determining that the remark does not express clear and unambiguous evidence of bigotry and noting that the trial judge viewed the jury's verdict as consistent with the evidence adduced at trial. Thus, the majority held, the extraordinary remedy of a new trial was not warranted.

The dissenting judge maintained that the trial judge had violated the Code of Judicial Conduct and that the juror's observation was sufficient to warrant a new trial. The dissent suggested that, rather than assume that no harm to defendant flowed from the juror's observation, the assumption should be that there was harm. The dissent also asserted that a new trial

8

is the only feasible remedy because the verdict was rendered too long ago to obtain meaningful, determinative information bearing on the jurors' decision making. Finally, the dissent stated that reversal would send a strong message of deterrence in respect of the inappropriate practice of ex parte communications with jurors.

## II.

Based on the dissent in the Appellate Division, defendant Husain contends that a new trial is warranted due to the trial court's failure to refrain from ex parte communication with the jurors, to make a record of the information the court learned during that ex parte communication, and to take steps to cure the court's errors by conducting an investigation into the role, if any, that the juror's observation had in assessing Husain's credibility. Plaintiff, on the other hand, emphasizes the high standard that must be met in order to grant a mistrial or even to engage in post-judgment inquiry into a juror's thought processes. Davis maintains that nothing that occurred in this matter merits those forms of extraordinary relief.

## III.

At the center of the errors found by the dissenting judge of the panel, highlighted in Husain's arguments in this appeal, is the problematic informal post-judgment interaction that occurred between the trial court and the jurors. Hence we begin

9

by turning to the safeguards in place governing interactions with jurors after a verdict.

A.

Pursuant to Rule 1:16-1,

> [e]xcept by leave of court granted on good cause shown, no attorney or party shall directly, or through any investigator or other person acting for the attorney, interview, examine, or question any grand or petit juror with respect to any matter relating to the case.

Calling back a jury for questioning following discharge is an "extraordinary procedure," to be utilized "only upon a strong showing that a litigant may have been harmed by jury misconduct." State v. Athorn, 46 N.J. 247, 250 (1966), cert. denied, 384 U.S. 962, 86 S. Ct. 1589, 16 L. Ed. 2d 674 (1966); see also State v. Harris, 181 N.J. 391, 503 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005); State v. Koedatich, 112 N.J. 225, 288 (1988). That exacting standard balances the litigant's interest in ensuring an impartial jury with the importance of keeping deliberations secret. See Harris, supra, 181 N.J. at 503.

Secrecy in deliberations "encourage[s] each juror to state his thoughts, good and bad, so that they may be talked out. 'Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world.'" State v.

10

LaFera, 42 N.J. 97, 106 (1964) (quoting Clark v. United States, 289 U.S. 1, 13, 53 S. Ct. 465, 469, 77 L. Ed. 993, 999 (1933)). Generally, discussions that jurors have while deliberating remain shielded from litigants, attorneys, and the public eye, and may not provide grist for overturning the jury's verdict. Athorn, supra, 46 N.J. at 250-51; see also State v. LaRocca, 81 N.J. Super. 40, 42-45 (App. Div. 1963) (affirming denial of defendant's motion to question jury post-verdict because "no credible information" was presented "which would indicate that improper, extraneous factors were injected into the jury room").

Similarly, a judge's ability to inquire of jurors after trial is limited except where Rule 1:16-1 provides a good-cause basis to do so, and then only in the presence of counsel. Ex parte discussions between the trial court and jurors are inappropriate and improper, both during trial and after the jury is discharged. Rule 1:16-1 contemplates public proceedings based on good cause if, and only if, a post-verdict inquiry of a juror is shown to be warranted. It does not authorize post-verdict ex parte communications by judges. Inquiring into any juror's thought process is a significant intrusion into the deliberative process. The rigors of determining whether good cause exists for such an intrusion militate against any informality in the manner by which juror information is disclosed.

11

During the pendency of the trial, the rules speak with crystal clarity. Rule 1:2-1 controls judge and jury interactions, and it provides that "[a]ll trials, hearings of motions and other applications, pretrial conferences, arraignments, sentencing conferences . . . and appeals shall be conducted in open court unless otherwise provided by rule or statute."

Once the jury is in the midst of deliberations, ex parte communications between judge and jury are improper. Jury inquiries during deliberations necessitate the involvement of counsel; similarly, judicial responses or communications with the jury require counsel's presence. See, e.g., State v. Morgan, 217 N.J. 1, 15 (2013) (finding ex parte discussions between judge and jury in jury room "plainly improper"); State v. Gray, 67 N.J. 144, 148-49 (1975) (finding error in trial court's answering of question from deliberating jury without consulting counsel); State v. Auld, 2 N.J. 426, 431-32 (1949) (finding trial judge's written communication with deliberating jury improper); State v. Basit, 378 N.J. Super. 125, 130-34 (App. Div. 2005) (declaring trial court's ex parte, unrecorded response to jury question erroneous); State v. Brown, 275 N.J. Super. 329, 331-34 (App. Div.) (finding court to have acted improperly when clarifying jury's written question without having counsel present), certif. denied, 138 N.J. 269 (1994);

12

Guzzi v. Jersey Cent. Power & Light Co., 36 N.J. Super. 255, 264 (App. Div.) (holding judicial officer's ex parte communication with jury, delivered on behalf of trial judge, improper), certif. denied, 19 N.J. 339 (1955).  Many pitfalls are associated with the practice of allowing ex parte communications between a judge and a deliberating jury:

> [I]t is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting.  Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury -- all the more so when counsel are not present to challenge the statements.
>
> [United States v. U.S. Gypsum Co., 438 U.S. 422, 460, 98 S. Ct. 2864, 2885, 57 L. Ed. 2d 854, 884 (1978).]

While not every ex parte communication that may occur between a trial court and a jury during deliberations has required reversal of the jury's verdict, we recently explained in a criminal appeal setting that,

> (1) if the record affirmatively reveals that the defendant was prejudiced, reversal is required; (2) if the record does not show whether the ex parte contact was prejudicial, prejudice is presumed; and (3) if the record affirmatively discloses "that the communication had no tendency to influence the verdict," the outcome should not be disturbed.
>
> [Morgan, supra, 217 N.J. at 12 (quoting Auld, supra, 2 N.J. at 432).]

B.

13

To the extent that ex parte judge-juror interactions post-verdict have been examined in this state, such interactions have been viewed with disapproval. Two published Appellate Division cases have expressed clear disapproval of the practice.

In Ertle v. Starkey, 292 N.J. Super. 1, 5-6 (App. Div. 1996), a slip-and-fall negligence action, the jury returned a no-cause-of-action verdict, finding that the plaintiff was eighty percent liable for his injuries. Following the verdict, the plaintiffs moved for a judgment notwithstanding the verdict, which the court denied. Ibid. Following the denial, the judge informed counsel that he would be talking with the jury informally about their experience as jurors, on the record, but not in the presence of the parties or their counsel. Id. at 6. The plaintiffs' counsel requested permission to listen to the judge's conversation with the jury, which the judge advised against, alluding to the likelihood that the plaintiffs would be moving for a new trial in the future. Ibid. While talking to the jury, "one or more of the jurors indicated that they would have liked to have been able to ask questions during the trial, such as whether there was any other person that had fallen on the stairs at issue." Ibid. Other jurors expressed skepticism about the plaintiffs' claim. Ibid.

On appeal, the plaintiffs argued that the conversation with the jurors should not have been conducted in the absence of

14

counsel and that the judge violated Canon 3A(6) of the Code of Judicial Conduct by speaking to the jury. Ibid. In affirming the trial court judgment, the Appellate Division found no violation of the Code of Judicial Conduct, reasoning that

> [t]he judge was neither conducting a hearing nor seeking advice on any pending legal matter. Inasmuch as the jury had completely discharged its function, the case was over as far as it was concerned. Indeed, the record of the colloquy with the jurors demonstrates that the judge was simply trying to enlighten the members of the jury as to the legal proceeding in which they had been asked to participate as part of the judicial process. Although we do not endorse the procedure used here, we can fully appreciate that in many situations this is desirable in order to help jurors to understand the nature of legal proceedings, which thereby promote their confidence in the judicial system. By no means was this, nor should it have been, a formal judicial inquiry into trial matters warranting the presence of counsel. Nonetheless, we are of the view that trial judges should refrain from such interaction in the future so as to avoid the type of allegations of judicial bias that have been made in this appeal or other claimed grounds for appeal.
>
> [Id. at 7.]

The panel further determined that the trial judge's discussion with the jury was not clearly capable of producing an unjust result because there was no indication that the conversation had an "effect on the trial judge's impartiality or his subsequent ruling with respect to the new trial motion." Id. at 8.

15

Post-verdict ex parte communication between judge and jury was considered again, a decade later, in a criminal context. There, similar to the Ertle court, the appellate panel could not conclude from the record before it that the challenged communication affected the defendant's due process rights. In State v. Walkings, 388 N.J. Super. 149 (App. Div. 2006), the defendant was convicted of third-degree drug offenses and resisting arrest. Id. at 151-52. Shortly after the jury rendered the verdict, a juror left a message for the assistant prosecutor, who forwarded the message to an investigator. Id. at 155. The investigator contacted the juror and advised him that the conversation was being taped and that the assistant prosecutor could not speak to him. Ibid. The investigator informed the juror that the fact of the call would be brought to the attention of "the appropriate authority"; in fact, the trial court was informed of the incident. Ibid.

After the defendant in Walkings filed a motion contending that the juror's attempt to communicate concerns about deliberations warranted a new trial, ibid., the judge spoke to the juror "off the record" and without the knowledge or presence of any counsel, id. at 155-56. During oral argument on the defendant's motion, the judge's conversation with the juror was revealed, apparently for the first time, when the court stated:

16

THE COURT: As to the juror--my telephone conversation with that juror really just was the juror recounting a dynamic of what jury deliberations are all about, a concern that there was--at least some concern on the part of that juror that a result would not be reached, and, of course, concluded with the fact that there was a unanimous verdict ultimately. There is no showing of any tampering of any kind. That's not even suggested by any stretch of the imagination. The phone call to the prosecutor said nothing about that. This was simply, perhaps, someone inexperienced in the experience of jury deliberations who was retelling their account, so it didn't even border on the kind of information that I thought would require the Court to expose the juror and the jury deliberative process to scrutiny, and so for that reason I took no further action.

[Id. at 157.]

The Appellate Division examined the entire colloquy from the argument, noted that the record did not reveal the juror's statements or specific concerns about the deliberations, and concluded that the matter needed to be remanded for "a further exploration of the issues, including the creation of a record that would disclose all the communications between and among the juror, the prosecutor's office and the trial judge." Id. at 157-58.

In addition, the panel in Walkings disapproved of the trial judge's ex parte communication with the juror, stating that the absence of any "recording of the conversation precluded the State and the defendant from securing a full understanding of

17

what transpired." Id. at 158. The panel noted that "the fact that the conversation occurred out of the presence of the defendant and his counsel may have -- depending upon whether the remand proceedings can provide a sufficient re[-]creation of what occurred -- imperiled defendant's due process rights." Ibid. Notwithstanding that the existing state case law only addressed communications with jurors during the course of deliberations, ibid., the panel stated that it "[saw] no principled reason for permitting ex parte communications concerning the jury's deliberations once a verdict has been rendered and the jury discharged," id. at 158-59.

With that experience in mind, we turn to the present appeal.

IV.

A.

Generally stated, avoiding the aura of irregularity that arises from ex parte judge-juror interactions has always been a goal in and of itself. Canon 3 of the Code of Judicial Conduct exhorts judges to "perform the duties of judicial office impartially and diligently," and specifically states, under adjudicative responsibilities identified in Canon 3A(6), that "[a] judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law,

18

neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding." As starkly raised in this case, the issue of post-verdict ex parte communications between a trial court and jurors calls for an unambiguous rule that provides clear guidance to judges and litigants.

Our holding is simply stated. Post-verdict ex parte communication between the trial court and jurors cannot be countenanced. The informality of such encounters, however benign their intended purpose, creates the possibility for the innocent remark or question to spark an attempt to plumb jurors' decision-making processes. Ex parte inquiries prevent the proper presentation of information otherwise subject to the rigorous scrutiny of a Rule 1:16-1 formal inquiry. The asserted salutary purposes of "education" of the bench and bar cannot justify this ex parte communication practice. "Off the record" conversation between the judge and jury is incompatible with our entire system of open and public court proceedings, in which parties' interests are protected through their presence and that of their counsel.

We therefore prohibit, as part of our constitutional supervisory authority over the conduct of civil and criminal trials in this State, ex parte post-verdict communications between a trial judge and jurors. N.J. Const. art. 6, § 2, ¶ 3;

19

Pasqua v. Council, 186 N.J. 127, 152 (2006) ("Article VI, Section 2, Paragraph 3 of the New Jersey Constitution invests the Supreme Court with the authority to make rules for the 'practice and procedure' of the courts."); see also State v. Lazo, 209 N.J. 9, 28 (2012) (relying on "supervisory powers under Article VI, Section 2, Paragraph 3 of the State Constitution" in mandating certain trial procedure); State v. Henderson, 208 N.J. 208, 254 (2011) (requiring eyewitness identification procedure pursuant to authority granted by Article VI, Section 2, Paragraph 3 of New Jersey Constitution). This bright-line directive shall provide guidance henceforth for all judges. To the extent that judges wish to thank jurors for their invaluable service to the public trial process in which they have just participated, that should be done in open court in the presence of counsel.

B.

Turning to the matter at hand, we begin by noting that despite the general disinclination to allow post-verdict inquiry of jurors, exceptions perforce exist. Rule 1:16-1 recognizes the public interest in maintaining secrecy in jury deliberations, but authorizes action to avoid "'gross injustice by permitting inquiry into the events surrounding the jury's decision only where'" a good cause showing is made that the jury's decision was tainted by misconduct. State v. R.D., 345

N.J. Super. 400, 405 (App. Div. 2001) (quoting Pressler, Current N.J. Court Rules, comment 1 on R. 1:16-1 (2002)).

"Good cause" under the rule refers to some information that enters jury deliberations and has the capacity for prejudice. See State v. Loftin, 146 N.J. 295, 381 (1996); see also State v. Kociolek, 20 N.J. 92, 100 (1955). A showing of good cause includes information that is communicated to jurors -- by another juror or by an outsider -- that is extraneous to the issues that the jury is deciding, and that would be sufficiently prejudicial to warrant a new trial if such information were considered by the jury. See Kociolek, supra, 20 N.J. at 100. Thus, one example is when a juror interjects into the jury's collective deliberations facts, correct or not, that are outside the trial record. See Athorn, supra, 46 N.J. at 251-52 (citing Brandimarte v. Green, 37 N.J. 557 (1962); Kociolek, supra, 20 N.J. at 92).

An indication that jurors have used improper information in deliberations may require an inquiry into the information's effect on the jury's decision making. See Brandimarte, supra, 37 N.J. at 561-63 (finding trial judge prematurely denied motion for new trial where adequate investigation was not performed into extent defendant's lack of insurance coverage was considered in deliberations). Also, an indication that a juror's comments in the jury room manifested unlawful bigotry

21

against a defendant can provoke a similar need for inquiry by the trial judge. See Athorn, supra, 46 N.J. at 251-52 (citing State v. Levitt, 36 N.J. 266 (1961)). Either set of circumstances can be the basis for overturning a jury verdict. Id. at 251.

That said, any investigation must be narrow to serve the interest in maintaining jury-deliberation secrecy: "[the] inquiry is limited to the effect of the improper extraneous matter and [does] not include probing the mental processes of the jurors." State v. Onysko, 226 N.J. Super. 599, 603 (App. Div. 1988) (citing Brandimarte, supra, 37 N.J. at 563-65). If a court determines that there is good cause to question the jury, this Court has emphasized that it is the trial judge who must be charged with questioning the jury because "[p]robing into a jury room is too delicate a task to be carried out in the framework of adversary proceedings." Brandimarte, supra, 37 N.J. at 565; see also Levitt, supra, 36 N.J. at 271 ("Because of the delicacy of the questioning of jurors, we think the proper practice would be for the trial judge to take the testimony of the jurors himself in the presence of counsel, rather than expose jurors to questioning by others.").

In this matter, the record for review is unacceptably abridged. There was no inquiry of the juror on the record, or inquiry of any of the other jurors if their decision making was

22

impacted by the individual juror's actions or comments. The way to properly handle such an inquiry depends on the individual juror's credibility. It also depends on her answers to questions about her comment and what, if anything, she said to other jurors, or what those jurors themselves might have expressed about the administration of the oath to Husain. However, all that is in the present record is the judge's comments during colloquy with counsel as part of the post-verdict motion practice. Under these circumstances, we are compelled to remand this matter for further proceedings to allow a proper inquiry to be conducted by the judge to whom this matter will be assigned on remand. A new judge must consider afresh the import of the juror's observation and comment, along with all other relevant factors bearing on whether a Rule 1:16-1 formal inquiry is warranted.

It is an understatement that the present status of this matter is troubling. We note the considerable amount of time that has passed since trial, the size of the verdict, and the fact that the present problematic posture of this matter would have been avoided by seeking relief under Rule 1:16-1 by way of a motion for a new trial, timely filed when the trial had more recently occurred. We are reluctant to engage in a presumption of prejudice under these circumstances. All concerns appropriate to a Rule 1:16-1 assessment must be factored into

23

its application when considering the extraordinary remedy of a grant of a mistrial. See State v. Winter, 96 N.J. 640, 647-48 (1984). In conclusion, we trust that the court on remand will engage in a practical and efficient means of illuminating the murky facts that have been presented on appeal. Our holding today prohibiting ex parte post-verdict communications between trial judge and jurors is intended to prevent the repetition of circumstances such as these by keeping exchanges public, on the record, and in the presence of counsel.

V.

The matter is remanded for further proceedings solely on this issue. In all other respects, the Appellate Division judgment is affirmed. We do not retain jurisdiction.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

SUPREME COURT OF NEW JERSEY

NO.   A-34                      SEPTEMBER TERM 2013

ON APPEAL FROM      Appellate Division, Superior Court


TOMIKIA DAVIS,

        Plaintiff-Respondent,

                v.

ABBAS HUSAIN, M.D.,

        Defendant-Appellant.


DECIDED          December 23, 2014
                 Chief Justice Rabner          PRESIDING
OPINION BY          Justice LaVecchia
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY

| CHECKLIST | REMAND/AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| | 7 | |

1